J-A27037-19

2020 PA Super 39

COMMONWEALTH OF
PENNSYLVANIA,

           Appellee

           v.

AARON LUCKY,

           Appellant

:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT
OF PENNSYLVANIA

No. 1672 EDA 2018

Appeal from the Judgment of Sentence May 4, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008044-2013

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:         **FILED FEBRUARY 13, 2020**

Aaron Lucky (Appellant) appeals from the judgment of sentence of three and one-half to seven years of incarceration entered following the revocation of his probation. Upon review, we vacate the judgment of sentence and remand for resentencing.

We glean the following factual and procedural background from the record. On January 23, 2014, Appellant pleaded guilty to one count of third degree felony retail theft[1] for stealing $120 worth of body wash from a drugstore in Philadelphia. On March 13, 2014, the trial court sentenced Appellant to 6 to 23 months of county incarceration, followed by three years of reporting probation. On June 2, 2014, Appellant was granted parole.

---

[1] Appellant had at least two prior retail theft convictions. **See** Information, 6/28/2013, at 1 (unnumbered).

* Retired Senior Judge assigned to the Superior Court.

Subsequently, a bench warrant was issued for Appellant based on his failure to report to his probation officer and one failed drug test. Appellant was arrested on February 29, 2016. On March 18, 2016, after a **Gagnon I**[2] hearing, the revocation court found Appellant in technical violation of his probation. N.T., 3/18/2016, at 21. The revocation court deferred sentencing pending the completion of pre-sentence investigation and mental health evaluation reports. **Id.** at 21-22. At a hearing on June 1, 2016, the revocation court revoked Appellant's probation and sentenced Appellant to a statutory maximum term of three and one-half to seven years of incarceration. Appellant did not file post-sentence motions or a direct appeal.

On December 19, 2016, Appellant timely filed a *pro se* petition seeking relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, claiming, *inter alia*, ineffective assistance of counsel for failure to present witnesses and other evidence at his June 1, 2016 sentencing hearing. Counsel was appointed and filed an amended PCRA petition on September 19, 2017, which included additional claims relating to counsel's ineffectiveness at the sentencing hearing, as well as counsel's failure to file post-sentence motions or a direct appeal. On March 2, 2018, with the agreement of the parties, the PCRA court granted, Appellant a new sentencing hearing.

---

[2] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973) (outlining the procedure for the revocation of probation and parole).

Supplemental pre-sentence investigation and mental health evaluation reports were ordered.

The resentencing hearing was held on May 4, 2018. At the hearing, Appellant presented the testimony of his employer and mother. Appellant was working about 40-50 hours per week for a retail supply company at the time of his arrest for violation of his probation. N.T., 5/4/2018, at 10, 12-13. Appellant's employer testified that Appellant was a "very hard-honest good worker," was "good with people," went "way above and beyond" on the job, and was punctual. *Id.* at 13. His employer testified that he had a full-time job offer waiting for Appellant upon his release from prison. *Id.* at 13-14.

Appellant's mother, who is in her seventies, testified that before and during Appellant's probation, he assisted his mother on a regular basis, performing chores such as cleaning, cooking, and shopping. *Id.* at 19. She also testified that she loves Appellant and he is "very good" to her, her husband, and Appellant's siblings. *Id.* at 20, 32.

In addition, Appellant's counsel offered medical records and information relating to Appellant's significant medical needs. *Id.* at 23. During argument, Appellant's counsel asked the resentencing court to reconsider its prior sentence of total confinement and to impose a sentence which amounted to time-served, with possibly one year of probation, because Appellant had already served about two years and seven months of incarceration on this conviction. *Id.* at 24-25. His counsel argued that the factors to consider in

resentencing Appellant were the nature of his underlying offense, retail theft; that his probation violations were technical, *i.e.*, failure to report and one failed drug test; that he has a job waiting for him upon release; that he has a loving and supportive family; and that his serious medical needs could be better treated outside of prison. *Id.* at 24.

The Commonwealth joined Appellant's request for a time-served sentence with a period of probation, and indicated on the record that it supported Appellant's release and return to work.[3] *Id.* at 26-27.

Next, Appellant addressed the court in allocution. He apologized and took responsibility for his conduct that resulted in the technical probation violations. *Id.* at 31. Appellant, who is in his fifties, also highlighted his lack of any further criminal charges or convictions while on probation, his

_____

[3] The prosecutor indicated that he had been instructed to recommend a sentence of six to twelve months, but he did not think such a sentence was necessary. The prosecutor explained as follows.

> [ADA]: … At the risk of getting in trouble, I'll be honest with you, I don't think six to 12 months is necessary here. I think, looking at [Appellant's] record, mainly his age, but even with the exception of – there's a couple – there's a burglary and an aggravated assault. Those did not result in convictions. They are also from the 1980's. Given the amount of time that he has spent in custody, I'd actually join in the recommendation to reconsider the sentence and give [Appellant] the opportunity to get out, to work, place him on a new period of probation. I recognize that he didn't do all that well the first time on supervision, but the fact that he served two-and-a-half years combined with the lack of violence in his record, I think, I would like to see him do well with getting out, so.

N.T., 5/4/2018, at 26-27.

completion of a vocational program, his employment history, the length of time he had already served on the retail theft conviction, his medical needs, and his relationship with his aging parents. *Id.* at 28-35.

The resentencing court then considered the pre-sentence investigation report, which included Appellant's extensive criminal history dating back to 1982, and indicated that Appellant had been found guilty of two misconduct charges while incarcerated in 2016 and 2017, that Appellant can be manipulative and uncooperative, and that Appellant is at high risk for reoffending. *Id.* at 35-36, 38. The resentencing court also considered Appellant's mental health evaluation report, including an evaluator's prognosis of Appellant as "guarded;" the conduct which resulted in technical probation violations; his employment history and how it did not correspond to what had been reported; his poor health; his past drug use which appeared to be in remission; and his apparent lack of progress in completing certain programs while incarcerated. *Id.* at 35-39.

The resentencing court then imposed a sentence of two and one-half to five years of incarceration, with credit for time served, followed by two years of probation. *Id.* at 40-41. After Appellant's counsel clarified the sentence with the resentencing court, Appellant asked for permission to address the court, which was allowed. *Id.* at 42-43. Appellant asked questions about the length of the sentence that the court had just imposed, and expressed his view that the new sentence was really the same as the June 1, 2016 sentence,

in terms of the overall period of time Appellant would be subject to supervision. *Id.* at 43. The judge interrupted Appellant, asking Appellant whether he was "seriously going to argue with" her when she had just reduced his sentence, and stating she had not been inclined to do so. *Id.* at 44. Appellant expressed he was upset by the sentence especially given the Commonwealth's recommendation of a time-served sentence. *Id.* at 45-46. At this point, the resentencing court stated it had reconsidered the sentence and re-imposed the statutory maximum sentence of three and one-half to seven years of incarceration, with the same conditions.[4, 5] *Id.* at 47.

On May 14, 2018, Appellant filed a post-sentence motion seeking reconsideration of his sentence, which set forth the same claims of error Appellant now raises on appeal. The court denied the motion for

---

[4] The May 4, 2018 order sentenced Appellant to three and one-half to seven years of incarceration, with credit for time served, followed by two years of probation, with rehabilitative conditions imposed. On March 12, 2019, the lower court filed an amended order of sentence, which amended its May 4, 2018 order "to correct a scrivener's error." Order, 3/12/2019. The lower court "vacated the two year probation period *nunc pro tunc* to May 4, 2018" and ordered all other terms and conditions to remain. *Id.*

[5] After the resentencing court re-imposed the statutory maximum sentence, Appellant had a verbal outburst, which included profanity, slurs, and inflammatory comments, some of which were directed to the judge personally. N.T., 5/4/2018, at 48-54. Appellant was charged with, summarily convicted of, and sentenced for contempt. *Id.* at 52-54. We strongly condemn Appellant's behavior and utter lack of respect for the judge and the court. The judge subsequently vacated Appellant's sentence for contempt. N.T., 6/19/2018, at 4.

reconsideration by order dated June 19, 2018. On June 4, 2018, Appellant timely filed the instant appeal. Both Appellant and the resentencing court complied with Pa.R.A.P. 1925.[6]

On appeal, Appellant presents the following four issues[7] for our consideration.

> a. Did not the [resentencing] court err, abuse its discretion, and violate general sentencing principles when, following a revocation of probation for technical violations, the [revocation] court imposed the statutory maximum sentence for retail theft, which sentence was unduly harsh, and manifestly excessive, unreasonable, and disproportionate to the nature of the underlying offense and the probation violations, and when the court failed to take into account and weigh all mitigating, relevant and necessary factors to be considered by a sentencing court, and when confinement in a state correctional facility for the term imposed is inconsistent with the aims of Pennsylvania's sentencing laws and is violative of Appellant's right to due process under the United States and Pennsylvania Constitutions?

---

[6] On December 3, 2018, Appellant filed in the lower court a motion for bail pending appeal. On January 8, 2019, the court denied the motion without a hearing. On January 25, 2019, Appellant filed an application for bail pending appeal in this Court. The Commonwealth filed an answer on February 5, 2019, stating it "would not oppose a limited remand to obtain a statement of the reasons" for the lower court's denial of bail. Answer, 2/5/2019, at ¶ 4. On February 22, 2019, we directed the lower court to submit a statement of reasons for denying bail pending appeal, which was filed on March 12, 2019. On March 20, 2019, by *per curiam* order, this Court denied Appellant's application for bail.

[7] In his Rule 1925(b) statement, Appellant raised a fifth issue, *i.e.*, whether his sentence of three and one-half to seven years of incarceration, followed by two years of probation, was illegal because it exceeded the statutory maximum sentence. As noted *supra*, the trial court corrected Appellant's judgment of sentence on March 12, 2019. Accordingly, Appellant indicates in his brief that "this issue is resolved and there is no need to address it on appeal." Appellant's Brief at 3 n.1.

b. Did not the [resentencing] court violate the requirements of 42 Pa.C.S. § 9771(c) and the fundamental norms of sentencing by imposing a sentence of total confinement when 1) Appellant had not been convicted of a new crime; 2) Appellant's conduct did not demonstrate that he would commit a new crime if not incarcerated; and, 3) incarceration was not essential to vindicate the authority of the court?

c. Did not the [resentencing] court err when it imposed a manifestly excessive and unreasonable sentence and failed to articulate in open court at the time of sentencing adequate reasons for the sentence imposed and failed to take into account and weigh the relevant sentencing factors, including the needs of community safety, the gravity of the offense as it relates to the victim, and the rehabilitative needs of [] Appellant, as required by 42 Pa.C.S. § 9721(b)?

d. Was not the sentence imposed manifestly excessive and unreasonable, the product of an abuse of discretion by the court, and violative of Appellant's due process rights under the United States and Pennsylvania Constitutions, as it was not based on factors set forth in the sentencing code and, instead, was the result of the [resentencing] court's partiality and bias against, or ill will towards, Appellant, as reflected throughout the proceedings in this case?

Appellant's Brief at 3-5 (some capitalization altered).

These issues present a challenge to the discretionary aspects of Appellant's sentence, which we consider mindful of the following.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

* * *

- 8 -

> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved his issues in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. *See* Appellant's Brief at 33-35. Therefore, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825,

828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant contends the resentencing court violated the express provisions of the sentencing code and imposed an excessive sentence in contravention to the fundamental norms underlying the sentencing process. Appellant's Brief at 33. Specifically, Appellant asserts the resentencing court abused its discretion in that: (1) the court imposed a statutory maximum sentence of total confinement for technical violations of probation when the prerequisites in 42 Pa.C.S. § 9771(c) were not met; (2) the sentence was disproportionate to Appellant's conduct and was not justified by sufficient reasons; (3) the sentence was manifestly excessive and does not fulfill the requirements of 42 Pa.C.S. § 9721(b); and (4) the sentence was the product of the court's bias, prejudice, and ill will. *Id.* at 33-35.

We conclude Appellant has raised a substantial question with each of his claims. *See Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000) ("On appeal from a revocation proceeding, … a substantial question is presented when a sentence of total confinement, in excess of the original sentence, is imposed as a result of a technical violation of parole or

probation."); ***Commonwealth v. Parlante***, 823 A.2d 927, 930 (Pa. Super. 2003) (a claim that the trial court disproportionately sentenced a defendant without providing a justification raises a substantial question); ***Commonwealth v. Williams***, 69 A.3d 735, 740 (Pa. Super. 2013) (finding a claim that "court imposed a sentence unreasonably disproportionate to her crimes and unduly excessive" raised a substantial question); ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa. Super. 2011) ("An allegation of bias in sentencing implicates the fundamental norms underlying sentencing and … raises a substantial question."). Thus, we may consider the merits of his claims.

Because we find it dispositive, we first address Appellant's assertion that the resentencing court abused its discretion when it fashioned his sentence as a result of the judge's partiality and bias against, or ill will toward Appellant. Appellant argues that the conduct of the judge in this matter demonstrated bias against and ill will toward Appellant "in the court's assumption of a prosecutorial role in the proceedings and in its engagement in an ongoing controversy with [Appellant] during the re-sentencing hearing." Appellant's Brief at 51. Specifically, he contends that the court interfered with the district attorney's prosecutorial decisions, the court's comments reflected an indication of a "power struggle" with the district attorney's office which "infected" Appellant's proceedings and sentence, the court's questioning of witnesses demonstrated a prosecutorial bent, and during an "increasingly

heated exchange" the court became "personally embroiled" with Appellant and suddenly increased the sentence to the statutory maximum without providing any reason for the increase. *Id.* at 52-58. Accordingly, Appellant requests that we vacate the judgment of sentence and remand the case for resentencing before a different judge. *Id.* at 58-59.

The Commonwealth concedes that while it "does not agree with every reason [Appellant] gives in support of his [partiality, bias, or ill will] claim, it does agree that the [] court's sudden increase in sentence to the maximum was an abuse of discretion, because it could appear to have resulted from the court's personal frustration with [Appellant], rather than a legally legitimate basis." Commonwealth's Brief at 17-18.

In its Rule 1925(a) opinion, the resentencing court did not respond to Appellant's claim of bias, partiality, and ill will, but suggested it reconsidered Appellant's sentence and re-imposed a sentence of three and one-half to seven years because "Appellant argued with the [c]ourt and displayed disrespect." Rule 1925(a) Opinion, 4/10/2019, at 11 (pagination supplied).[8]

We consider this issue mindful of the following.

> Our Supreme Court has stated that it presumes that judges of this Commonwealth are "honorable, fair and competent," and vests in each jurist the duty to determine, in the first instance, whether he or she can preside impartially. ***Commonwealth v. White***, [] 734 A.2d 374, 384 ([Pa.] 1999).

---

[8] Appellant also had raised this issue in his post-sentence motion, but the court did not address it in its order denying said motion. ***See*** Post-Sentence Motion to Modify Sentence, 5/14/2018, at ¶26; Order, 6/19/2018.

*** 

> The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. ***Commonwealth v. Knighton***, [] 415 A.2d 9 ([Pa.] 1980). This means[ ] a jurist who "assesses the case in an impartial manner, free of personal bias or interest in the outcome." ***Commonwealth v. Abu-Jamal***, [] 720 A.2d 79, 89 ([Pa.] 1998). Because of the tremendous discretion a judge has when sentencing, "a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned." ***Commonwealth v. Darush***, [] 459 A.2d 727, 732 ([Pa.] 1983). "A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings." ***In Interest of McFall***, [] 617 A.2d 707, 714 ([Pa.] 1992).

> [***Commonwealth v. ***]***Rhodes***, 990 A.2d [732, ]748 [(Pa. Super. 2009)], *quoting* ***Commonwealth v. Druce***, [] 848 A.2d 104, 108 ([Pa.] 2004) (some quotation marks and brackets omitted).

***Commonwealth v. Bernal***, 200 A.3d 995, 999-1000 (Pa. Super. 2018); ***see also Commonwealth v. McCauley***, 199 A.3d 947, 950 (Pa. Super. 2018) ("[T]he appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the actual presence of bias or prejudice.") (citation omitted).

As discussed *supra*, at the resentencing hearing on May 4, 2018, the judge initially sentenced Appellant to two and one-half years to five years of incarceration, followed by two years of probation. The record indicates that the judge considered multiple factors before imposing that sentence, including testimony from Appellant's employer and mother, counsel's arguments,

Appellant's allocution, and pre-sentence investigation and mental health evaluation reports. However, the judge did not disclose her sentencing rationale to Appellant when she suddenly increased it to the statutory maximum. The following exchange occurred.

> THE COURT: … [T]he sentence of this Court is that you serve two-and-a-half years to five years' state time incarceration, followed by two years of reporting probation, supervised by the state. Credit for time served to be calculated by the prison authorities.
>
> ***
>
> [DEFENSE COUNSEL]: Your Honor, could I just ask for clarification? For the two-and-a-half to five years' sentence with credit for time served, is that a time-served sentence then?
>
> THE COURT: Not necessarily. It depends on how they calculate it. And then what will happen is, he will be up, subject to parole, and depending on whether or not he's deemed suitable to be paroled at his minimum or at whatever time is calculated, that's up to the Parole Board.
>
> They will ask my recommendation and I'm pretty darn sure I may have a comment or two, depending on how you do.
>
> So I don't know where that comes in, because I don't calculate things, but all I'm telling you is, credit for time served. So that's my sentence.
>
> It may well end up being time served. I don't know. Yes?
>
> [APPELLANT]: You said two-and-a-half to be followed by what?
>
> THE COURT: Two-and-a-half plus two.
>
> [DEFENSE COUNSEL]: For the state to supervise you.
>
> THE COURT: State supervised.

[APPELLANT]: Can I say something to you, Your Honor?

THE COURT: Yes, go ahead.

[APPELLANT]: It seems like --

(Defense counsel conferring with [Appellant].)

[APPELLANT]: No. I have to say what I have to say. It doesn't matter right now. I'm getting seven years all over again, is that correct?

THE COURT: No.

[APPELLANT]: Two-and-a-half to five plus two years' probation, that's seven years, right?

THE COURT: You are under supervision for seven years.

[APPELLANT]: Right. So altogether that's seven years again, right --

THE COURT: It's not.

[APPELLANT]: -- because before I had time served to 23 [months], followed by three years, which was five years. And then you turned that into three-and-a-half to seven, correct?

THE COURT: Right.

[APPELLANT]: Okay. Now --

THE COURT: Now it's two-and-a-half to five. Are you seriously going to argue with me as I reduced your sentence?

[APPELLANT]: No, I wasn't arguing with you. I was just letting you know --

THE COURT: I seriously, seriously think you need to stop and think before you speak, because let me tell you something, [Appellant], I was not inclined to reduce that sentence.

Not inclined to reduce the sentence, which I just did, because every fiber in my body thinks you are going to re-offend,

because to date, and what you just told me, sir, means that you have absolutely, sitting at this grand age, have presented yourself in such a so [*sic*] self-centered manner.

It's everybody else's fault but you. Well, wake up, sir, because if you're not going to wake up at 50-something years old, you're never going to wake up.

You are not one of these kids running in here that don't think past their nose.

So are you asking me anything else?

[APPELLANT]: Yes. Yes. I want to ask you something else--

THE COURT: Really?

[APPELLANT]: Please --

[DEFENSE COUNSEL]: Your Honor may --

[APPELLANT]: Have a seat.

THE COURT: Hey, if he wants to, go right ahead --

[DEFENSE COUNSEL]: -- I have a talk with him?

THE COURT: -- he has a right to.

(Defense counsel conferring with [Appellant].)

[APPELLANT]: Listen, have a seat.

THE COURT: You go right ahead, because you know what--

(Defense counsel conferring with [Appellant].)

[APPELLANT]: I'm not getting emotional.

THE COURT: -- I think I'm going to reconsider what I just ordered.

[APPELLANT]: You can do that. Can you not cut me off this time? I listened to you. I was trying to make my point.

THE COURT: Okay.

[APPELLANT[9]]: It was just this. Your Honor -- if you would let me understand something.

THE COURT: You go ahead.

[APPELLANT]: What I'm saying to you was that I came in here -- even this guy right here [referring to the assistant district attorney] said, you know what, I believe that [Appellant's] age now, that he's changed. And he's a DA and he was willing to give me a chance.

I'm sitting here, it's two-and-a-half to five, followed by two years, that's seven years.

Before, I had six to 23 [months], followed by three years' probation. She turned that into a seven.

This has been going on since 2013. You understand what I'm saying to you? I'm being calm, but the problem is --

(Defense counsel conferring with [Appellant].)

[APPELLANT]: No. I don't want to calm down. Listen. What I'm saying to you is that you're saying two-and-a-half to five. My parents here -- I'd like to go home, too. I go to sit up here.

THE COURT: Sir, I just gave you credit for time served.

[APPELLANT]: You said you was going to let me finish and then you stood up and said to me --

THE COURT: Now, I've reconsidered the sentence.

[APPELLANT]: That's okay. Fine.

THE COURT: Three-and-a-half to seven. Original sentence already set. Conditions as is set forth. Advise him. Fines and costs. Every other condition. I've had enough.

_____

[9] The notes of transcript indicate the court stated this, but from the context, it is obvious that it was Appellant who was speaking.

N.T., 5/4/2018, at 40-47.

In addition, the following exchange, which occurred at the March 2, 2018 PCRA hearing, demonstrated the judge's animus against the Philadelphia District Attorney's office. The parties appeared before the judge after the Commonwealth was directed to respond to Appellant's amended PCRA petition and motion for discovery relating to whether Appellant had requested his counsel to file a direct appeal. The judge inquired as to the Commonwealth's response, and the Assistant District Attorney (ADA) explained that the Commonwealth decided not to oppose Appellant's motion. The ADA responded as follows.

> [ADA]: Yes, Your Honor. So what happened, Your Honor, is that I did prepare a motion and then, upon our supervisor reviewing it, I was told that in concert with new guidelines and procedures and policies within our office, which the Court is probably aware of in terms of what types of pleas we would be offering and what types of recommendations we make on cases, that we actually do not oppose the motion. So in other words, we don't oppose the Court granting a *nunc pro tunc* direct appeal and we don't oppose the Court granting post-sentence motion reconsideration of sentence, and then we would have a recommendation as far as what that sentence would be from the Commonwealth's recommendation.
>
> THE COURT: Absolutely not.
>
> [ADA]: Of course, this is all at the Court's discretion.
>
> THE COURT: Who's your supervisor?
>
> [ADA]: Tracey Kavanagh, Your Honor.
>
> THE COURT: Tracey should know better.

[ADA]: And she discussed this with Nancy Winkleman and Paul George.

THE COURT: Uh-huh. Yeah, well, you waste my bloody time on nonsense.

[ADA]: Your honor, if I could address at least one of the claims that I think that we can separate it out and I can tell the Court what was going on with that. So we have a group of claims that basically are getting at the sentence. Putting those aside, we have a separate claim wherein counsel asked that the right to direct appeal be reinstated *nunc pro tunc*. I investigated that.

THE COURT: But there has to be a basis for the right to reinstate it.

[ADA]: I know. There may not be much left, Your Honor. But simply saying it is a separate claim, I did investigate that. I got some correspondence from [counsel for Appellant's] files that corroborate [Appellant's] assertion that he wanted an appeal and he was writing to [his counsel] about that appeal. So again, to just separate that out off to the side.

N.T., 3/2/2018, at 4-5. The ADA then explained that in investigating whether Appellant's former defense counsel failed to file a direct appeal despite Appellant's request, counsel provided the ADA with two undated letters in his file relating to Appellant's request for a direct appeal. The PCRA court then responded as follows.

THE COURT: All right. Let me go back and take a look at [Appellant's] matter. Because I'll be honest with you, right now I'm more than a little annoyed, more than a little annoyed. We are going to rewrite history to suit our social policies that we wish to promote. That's not what we're here for. We're here to follow the law.

[DEFENSE COUNSEL]: Your Honor, if I may.

THE COURT: Yes.

- 19 -

[DEFENSE COUNSEL]: We did submit exhibits along with the [PCRA] petition that show that [Appellant] did --

THE COURT: All right. Give me a second. I sentenced [Appellant] because that was the sentence that I deemed appropriate given his extensive history.

[DEFENSE COUNSEL]: And, Your Honor, the claim is that [Appellant] wished to appeal that. That's the only claim right now.

THE COURT: [] I'm reading it. I know that. I remember [Appellant] very well.

I tell you what. I'll play your game. All right? You can convey that back to your supervisors.

[ADA]: I certainly will, Your Honor.

THE COURT: Uh-huh. I'll grant [Appellant] a resentencing hearing. We'll have it over again by agreement. So we'll have another sentencing hearing for [Appellant]. Bring him in.

[ADA]: Your Honor, if I may just for the record.

THE COURT: You all can say whatever you want. What?

[ADA]: I was asked to tell the Court that [the Commonwealth] would not oppose moving immediately to sentencing and asking for a sentence of six months.

THE COURT: Yeah. Well, you can ask all you want, but I'll bring him in here and I'll do what I think is right and you can tell them that. And if this is going to be a pattern of activity, there is going to be a problem with this Court. …

\*\*\*

THE COURT: Unbelievable. Violates ten ways to Sunday and six months is appropriate.

*Id.* at 8-10.

Upon review, we conclude under these circumstances there is potential for an appearance of bias, partiality, or ill will by the resentencing court. In her Rule 1925(a) opinion, the judge did not respond to such accusations by denying them, by reflecting on her ability to proceed impartially, or by analyzing whether her actions might give rise to the appearance of bias, impartiality, or ill will. Instead, she quoted a portion of the notes of transcript from the May 4, 2018 resentencing hearing where she rebuked Appellant as disrespectful when he sought clarification of his sentence. **See** Rule 1925(a) Opinion, 4/10/2019, at 11 (pagination supplied). Notably, the portion of the notes of transcript which the judge quoted occurred **after** she re-imposed the statutory maximum sentence of three and one-half to seven years of incarceration.

There is nothing in the record to indicate that the judge's reason for abruptly re-imposing the increased statutory maximum sentence was for any reason other than her frustration with Appellant or her belief that Appellant was being disrespectful. This, coupled with the animus against the district attorney's office that the judge revealed in her comments at the March 2, 2018 PCRA hearing lead us to conclude that a reasonable observer could question whether the judge comported herself in an unbiased and impartial manner without ill will toward Appellant. **Commonwealth v. Whitmore**, 912 A.2d 827, 834 (Pa. 2006) ("Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose

impartiality cannot be questioned."), *citing* **Darush**, 459 A.2d at 732 (remanding for resentencing where there was an appearance of judicial impartiality and noting "the largely unfettered sentencing discretion afforded a judge is better exercised by one without hint of animosity toward appellant"). To protect the integrity of the resentencing proceeding and ensure any appearance of bias, partiality or ill will is eliminated, we remand for resentencing.

Finally, we address Appellant's request for remand for resentencing before a different judge. Appellant's Brief at 59. This Court does not have power to order the removal of a judge from a case, where that judge has made no ruling concerning her recusal because she was never asked to recuse. **Whitmore**, 912 A.2d at 834 (holding "the *sua sponte* removal of the trial court judge on remand for resentencing exceeded the authority of the Superior Court" where no recusal motion had been filed in the court below). However, Appellant is not precluded from filing a motion to recuse on remand.

> As a general rule, the proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He [or she] may determine the question in the first instance, and ordinarily his [or her] disposition of it will not be disturbed unless there is an abuse of discretion. This is, in part, to allow the requested judge to state his or her reasons for granting or denying the motion and, as the allegedly biased party, to develop a record on the matter.

*Id.* at 833 (quotation marks, citation, and some brackets omitted).

Based on the foregoing, we vacate the judgment of sentence and remand for resentencing.[10]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/20

---

[10] In light of our disposition, we need not address the merits of Appellant's remaining claims regarding the discretionary aspects of his sentence.