J-S16018-22

2022 PA Super 195

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOHN WILLIAM COLLINS :
:
Appellant : No. 1419 MDA 2021

Appeal from the Judgment of Sentence Entered September 9, 2021
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000227-2020

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED: NOVEMBER 18, 2022**

John William Collins appeals from the judgment of sentence of 15 days' incarceration and a fine of $600 after his non-jury conviction on two counts of harassment.[1] Upon careful review, we affirm.

This case involves a "wanted poster" and five letters that Collins authored and distributed through the United States Postal Service. The poster identifies the "wanted" man as Alan Hoffman, "an individual with whom [Collins] has apparently had a long-running dispute." Trial Court Opinion, 1/5/22, at 2.

The trial court described the poster, letters, and facts of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S. § 2709(a)(3).

The posters were copies of the same document . . . on letter-size paper, featuring a copy of Mr. Hoffman's mug shot and basic booking information for a January 26, 2018, arrest for controlled substance DUI, next to which had been written: "I crossed a Billy goat with a pig.  What did you get?  See for yourself; it's got a goat face and smells like a pig.  $500.00 reward to capture and put in a cage.  Call nearest police agency for reward.  Trying to impersonate a human being."

The letters were copies of the same package of documents, consisting of:  (1) a handwritten note stating the following:  "Alan Goat-Face Hoffman, [street address] Three Springs, PA 17264 drives a yellow [car, which] is same color as he is."; and (2) five copies of a page from Mr. Hoffman's Bedford County Court of Common Pleas Court Summary.

\*   \*   \*

The matter came before this Court for a bench trial on September 8, 2021 . . .

The Commonwealth's first witness was April Snyder, who, in late February of 2020, was employed as a clerk at the United States Post Office in Three Springs Borough, Huntingdon County, Pennsylvania.  She was familiar with [Collins] as a customer at that location.  Ms. Snyder initially received a report from one of her mail carriers that someone had put "flyers" in approximately 15 mailboxes along the mail carrier's route.  The mail carrier removed the "flyers" from the mailboxes and brought them to Ms. Snyder.

[She] identified the "flyers" found by the mail carrier as being copies of the poster.  Based on other information provided by the mail carrier, Ms. Snyder had reason to suspect [Collins] had placed the posters in the mailboxes, but she had no direct evidence.  That changed a few days later when Ms. Snyder personally witnessed [Collins] enter the Three Springs Post Office and post something on the bulletin board.  She went out to investigate, saw that it was another copy of the poster, and immediately took the poster down and threw it in the trash.

A few days after that, [Collins] came in to mail five letters.  He had Ms. Snyder weigh them, and all five required

- 2 -

additional postage, which he paid. One of the letters was addressed to Steve Heester, who has a P.O. Box at the Three Springs Post Office along with his wife, Dee Heester.

Ms. Snyder processed the letter to Mr. Heester along with the other mail and placed it in the Heesters' box. Dee Heester came in to get their mail later that same day, and the letter instantly caught her attention, prompting her to hold it up for Ms. Snyder's attention and ask what it was. Mrs. Heester then opened it in front of Ms. Snyder, revealing the contents to be the letter. Ms. Snyder took possession of the letter from Mrs. Heester and intercepted the other four letters that had been mailed by [Collins] at the same time before they had been delivered.

Subsequent inspection revealed each one to be a copy of the letter as well. Ms. Snyder reported the incidents to the U.S. Postal Inspection Service and the Pennsylvania State Police . . .

State Trooper Christopher Bourne investigated the incidents. He initially interviewed Mrs. Heester in response to a complaint she filed regarding the letter. He further interviewed Ms. Snyder, who provided him with the letters and posters (along with additional information regarding [Collins'] distribution of the posters). Trooper Bourne confirmed that the copies of the letter and poster entered into evidence were the documents he received from Ms. Snyder . . .

[Collins] elected to testify and admitted that he sent the letters and put the poster on the bulletin board at the Three Springs Post Office. He denied placing copies of the posters in mailboxes in the Three Springs Area, instead attempting to blame the mail carrier who discovered them. [He] testified that his intent was to alert people living in the immediate area that [Hoffman] had been convicted of DUI and was driving on a suspended license, so that if they saw [him] driving they would call the police. [Collins] had apparently contacted the State Police many times himself with respect to [Hoffman] driving with a suspended license and was frustrated that the State Police had not arrested [him].

However, [Collins] also testified he distributed the letters and posters in order to retaliate against [Hoffman]

- 3 -

for perceived wrongs [as the following exchange between Collins and his attorney revealed:]

> Q: I'm showing you [the poster]. Where did you get this document?
>
> A: It was from a website.[4]
>
> ---
> [4] [The poster] appears to have been obtained from a website titled "BUSTED NEWSPAPER," which contains a searchable database of arrest mugshots and booking information. The information on the [poster] shows it was obtained from the "Bedford County Mugshots" subsection of the website, under the "Pennsylvania Mugshots" section.
>
> ---
>
> Q: And that photograph on there, what is important about that to you?
>
> A: Well, it identifies who he is and also identifies that he was in custody when the picture was taken.
>
> Q: Now there is some writing on there that you have already admitted you wrote on there?
>
> A: Yes.
>
> Q: It says, "I crossed a Billy goat with a pig. What do you get? See for yourself." It's got an arrow pointing over to his picture. "It's got a goat face and smells like a pig. $500 reward to capture and put it in a cage. Call nearest police department for reward." You wrote that on there yourself?
>
> A: Yes.
>
> Q: That didn't come from that website?
>
> A: No, it did not.
>
> Q: Why did you put that on there?
>
> A: Well, [Hoffman] and his father both were going through the community spreading lies about me, and he was continuously bragging about the fact that he could get away with driving with no license. And I just felt somebody needed to let people know

what the truth was about him; that his license was suspended, and he is a menace to the area.

Q:    But to be fair, none of what you wrote on here talks about his suspended license, does it?

A:    No.

Q:    And you don't actually believe that you crossed a Billy goat with a pig to produce that man, do you?

A:    No.

Q:    So, you're not wanting anybody to believe that's the truth?

A:    No.

Q:    Would it be fair to say you wrote all this down there because you wanted to get back at him for spreading lies?

A:    Yes.

Q:    You were upset, and you wanted to take him down a peg?

A:    Yes . . .

Q:    Is it fair to say then, kind of summarizing what you were saying, you were wanting to tell people about the fact that man is a criminal and is driving without a license?  Is that what you're saying?

A:    Yes.

Q:    But it's also fair to say that you wanted to get back at him for spreading lies about you and flaunting the law?

A:    Yes.

On cross-examination, [Collins] admitted that he had not included anything on the poster that indicated the reason he was distributing it was because [Hoffman] was driving without a license.

*Id.* at 2-7 (citations to record and some footnotes omitted; some formatting altered).

At the close of the trial, the court convicted and sentenced Collins as related above. He sought post-sentence relief, which the trial court denied. This timely appeal followed.

On appeal, Collins raises three issues. First, he argues that the Commonwealth could not prosecute his conduct under the First Amendment to the federal constitution. Second, he asserts the Commonwealth did not produce sufficient evidence to sustain the conviction, as a matter of law. In this regard, Collins argues the harassment statute demands proof that his poster and letters reached the intended victim of the harassment, *i.e.*, Hoffman. Finally, Collins contends that his sentence was manifestly excessive as it was not based upon any real injury to Hoffman and instead was based upon the court's frustration at the behavior of both Collins and Hoffman.[2]

---

[2] We derive these issues from the headings of the argument section of Collins' brief rather than the statement of questions involved, the first two of which are largely duplicative of each other and do not correspond to the manner in which the argument is laid out in the brief. **Compare** Collins' Brief at 7-8 **with id.** at 13-24. To the extent Collins appears to assert in his statement of questions that he is challenging the denial of his omnibus pretrial motion based upon the Commonwealth's failure to present a *prima facie* case of harassment, this argument is waived as he fails to develop this issue beyond his mere recitation of the issue in the prefatory portion of his brief. **See Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted).

We address Collins' sufficiency claim first, because, if he correctly interprets the Pennsylvania harassment statute, this Court can thereby avoid the constitutional question that he raises. Under the doctrine of constitutional avoidance, "we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." ***Spector Motor Service v. McLaughlin***, 323 U.S. 101, 105, (1944); ***see also In re Stevenson***, 12 A.3d 273, 275 (Pa. 2010) (*per curiam*) ("[A]s a general matter, it is better to avoid constitutional questions if a non-constitutional ground for decision is available.").

### Sufficiency of the Evidence

Collins argues that, "[to] obtain a valid conviction against [him], the Commonwealth was required to prove that his statements were received by the alleged victim," Hoffman. Collins' Brief at 17. While Collins acknowledges that "communication of the statements to the alleged victim is not listed as an essential element of the statute charged here," he asserts that because the Commonwealth alleged that Hoffman was the victim of Collins' actions, "the Commonwealth was required to prove that [] Hoffman received [] Collins'[] statements." ***Id.*** at 17-18. Because "Hoffman specifically testified [] that he did not receive" the poster or letters, the convictions must be overturned based upon insufficiency of the evidence. ***Id.*** at 18-19.

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of

- 7 -

the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. *Id.* "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted).

The issue before us is whether the harassment offense of which Collins was convicted, *see* 18 Pa.C.S. § 2709(a)(3), requires that the harassing, annoying, or alarming communication reach its victim in order for a crime to occur. The trial court concluded that no such connection to the intended victim is required. Trial Court Opinion, 1/5/22, at 8-11. Our review of the statute confirms the trial court's interpretation.[3]

Under Section 2709(a)(3), the crime of harassment occurs "when, with intent to harass, annoy, or alarm another, the person . . . engages in a course

_____

[3] Because the trial court—the factfinder in this case—determined that Section 2709(a)(3) does not require proof of communication of a message directly to the individual being harassed and did not address whether the evidence at trial showed that Collins' message was received by Hoffman, we likewise do not focus on the Commonwealth's proof on this issue. However, we note that Hoffman did in fact testify that he ultimately discovered a different version of the poster on a bulletin board at another business in the community approximately one week after the incident at the post office. N.T., 9/8/21, at 40-42.

of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S. § 2709(a)(3). Unlike other subsections of the harassment statute, the text of subsection (a)(3) does not require the defendant to interact with his intended victim in order to commit the offense.

For example, subsection (a)(1) applies if the defendant "strikes, shoves, kicks or otherwise subjects **the other person** to physical contact . . . ." 18 Pa.C.S. § 2709(a)(1) (emphasis added). Similarly, subsection (a)(2) applies when the defendant "follows **the other person** in or about a public place or places[.]" 18 Pa.C.S. § 2709(a)(2) (emphasis added). Finally, subsection (a)(4) applies if the defendant "communicates to . . . **such other person** any lewd, lascivious, threatening, or obscene words, language, drawings, or caricatures[.]" 18 Pa.C.S. § 2709(a)(4) (emphasis added).

When "a section of a statute contains a given word, the omission of such word from a similar section of the statute shows a different legislative intent." ***Commonwealth v. Berryman***, 649 A.2d 961, 965 (Pa. Super. 1994) (*en banc*); ***see also Commonwealth v. Johnson***, 125 A.3d 822, 830-31 (Pa. Super. 2015). "Where a legislature includes specific language in one section of a statute and excludes it from another, that language should not be implied where excluded." ***Berryman***, 649 A.2d at 965.

Here, as the various subsections of statute demonstrate, the legislature could and did specify when the crime of harassment requires that the Commonwealth prove interaction between harasser and victim. Based upon the omission of any language in subsection (a)(3) requiring that the

defendant's course of conduct or repeated acts actually be communicated to or reach "the other person," we agree with the trial court's interpretation of this subsection. Engagement between harasser and victim is not an element of Section 2709(a)(3).

This Court "may not add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute." **Berryman**, 649 A.2d at 965. Thus, Collins' attempt to have this Court add a new element to the harassment statute fails. The General Assembly did not see fit to make interacting with the victim an element of Section 2709(a)(3). Therefore, it is not an element of that offense.

Collins' sufficiency argument affords him no appellate relief.

### First Amendment

Collins next argues that his prosecution for distributing the poster and letters to third parties rather than to Hoffman himself violates the free speech clause of the First Amendment to the United States Constitution.[4] Collins asserts that criminal punishment based upon a defendant's speech is permissible only when it falls within certain narrow exceptions to the First Amendment and here none of those exceptions are applicable. He contends

---

[4] Collins' brief does not contain any reference to the corresponding free speech right set forth in Article I, Section 7 of the Pennsylvania Constitution and therefore we solely address whether his conviction violates the First Amendment. **See** Pa. Const. Art I, § 7 ("The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.").

that the poster and letters were not obscene as they did not relate to sexual matters or appeal to prurient interests; he cannot be punished for defamation as Pennsylvania has chosen not to criminalize false statements in the harassment statute; and his comments regarding Hoffman were not "fighting words" as they were not the type of comments that would incite an immediate breach of the peace. As his conduct does not fall within any of the defined exceptions to free speech, Collins argues that "[t]o prosecute [him] for expressing his opinion of the alleged victim to third parties cannot be considered compatible with the freedom of expression safeguarded by our First Amendment." Collins' Brief at 16.

When a defendant challenges the constitutionality of a criminal statute, he raises a pure question of law for which our standard of review is *de novo,* and our scope of review is plenary. **Commonwealth v. Bradley**, 232 A.3d 747, 756 (Pa. Super. 2020).

> [A]cts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional.

*Id.* (quoting **Pennsylvania State Association of Jury Commissioners v. Commonwealth**, 64 A.3d 611, 618 (Pa. 2013)).

Collins does not argue here that Section 2709(a)(3) is unconstitutional on its face but rather challenges the application of the statute to his conduct

in this case. This Court has explained the distinction between facial and as-applied constitutional challenges to criminal statutes as follows:

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Id.* at 757 (quoting *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011)).

In his brief, Collins relies on the seminal United States Supreme Court decision of *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), in which the Court stated as follows:

> [I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Id.* at 571-72 (footnotes omitted). Collins then proceeds to address the three First Amendment exceptions recognized by *Chaplinsky* for obscenity,

criminal libel, and "fighting words,"[5] arguing that his posters and letters fit none of these exceptions.

Collins is correct that his speech does not fall within the identified exceptions to the First Amendment set forth in *Chaplinsky*: his posters and letters did not contain obscenities; no proof was offered that Collins' description of Hoffman was untrue, and in any event, Section 2709(a)(3) does not target defamation; and his speech did not technically constitute "fighting words" as Hoffman was not present when Collins distributed the posters or letters were distributed and therefore it was unlikely that they would have led to "an immediate breach of the peace." *Chaplinsky*, 315 U.S. at 572. However, the *Chaplinsky* exceptions do not purport to be an exhaustive list of the categories of speech that may be prosecuted under the First Amendment. Indeed, additional categories of offenses that criminalize speech—including solicitation, extortion, and other speech "integral to criminal conduct"—have been deemed to pass constitutional muster. *See United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *United States v. Hobgood*, 868 F.3d 744, 748 (8th Cir. 2017) (explaining that extortionate speech is not protected by the First Amendment); *In the*

_____

[5] Regarding the other First Amendment exception noted in *Chaplinsky* for "profane . . . words," the High Court has subsequently held that the use of profanity or vulgarities, by itself, is not punishable. *See, e.g.*, *Mahanoy Area School District v. B. L.*, 141 S.Ct. 2038, 2046-47 (2021); *Cohen v. California*, 403 U.S. 15, 25-26 (1971).

***Interest of J.J.M.***, 265 A.3d 246, 254 (Pa. 2021) (noting that child pornography, fraud, true threats, and other speech "integral to criminal conduct" are not immunized from prosecution under the First Amendment) (citation omitted). In addition, our Supreme Court has upheld a criminal statute prohibiting harassment by unwanted, repeated communications in the face of a First Amendment challenge, noting that the state has a legitimate interest in preventing harassment and that the offense was directed at the harassing conduct rather than the speech itself. ***See Commonwealth v. Hendrickson***, 724 A.2d 315, 318 (Pa. 1999) (rejecting facial overbreadth challenge to former 18 Pa.C.S. § 5504, now set forth in 18 Pa.C.S. § 2709(a)(4)-(7) and 18 Pa.C.S. § 2709.1).

Viewed in its totality, we conclude that Collins' public dissemination of the poster and letters falls outside the bounds of constitutionally protected speech. The communications were clearly intended to be insulting, attacking Hoffman's appearance ("it's got a goat face and smells like a pig"), parentage (stating that Hoffman was "a Billy goat [crossed] with a pig"), and character (stating that Hoffman was "yellow," i.e., cowardly). Trial Court Opinion, 1/5/22, at 2. Hoffman is not, by any account, a public figure in the town in which he and Collins live, and the communications related to matters that are not of public concern. ***See Snyder v. Phelps***, 562 U.S. 443, 452 (2011) ("Not all speech is of equal First Amendment importance, [] and where matters of purely private significance are at issue, First Amendment protections are often less rigorous.") (brackets and quotation marks omitted). Although

- 14 -

Collins testified that he was publicizing Hoffman's criminal record in order to advise the public that Hoffman was driving with a suspended license, his purpose was not evident on the face of the poster or letter and Collins admitted that his real motivation was to "get back at [Hoffman] for spreading lies about [him] and flaunting the law." N.T., 9/9/21, at 13, 16-19, 22. There is no question that Collins' publication of Hoffman's criminal record and the insults directed towards him were part and parcel of the two men's long-running feud.

Also crucial in our determination that Collins was engaged in unprotected speech is the fact that he identified Hoffman's home address and the make, year, color, and license plate number of Hoffman's vehicle. The inclusion of this information in the posters and letters served no other apparent purpose than as an invitation for the public to confront Hoffman at his residence or during his travels in the community. *See Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (upholding ban on residential picketing where picketing did not "seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way"). The belligerent nature of the communication was only accentuated by the juxtaposition of Hoffman's mug shot photograph with Old West-style "wanted poster" language, with an offer of a "$500.00 reward to capture" Hoffman and "put [him] in a cage." Trial Court Opinion, 1/5/22, at 2. Moreover, Collins did not simply resort to announcing his criticisms of Hoffman to passersby in a public forum, but he also directed his injurious message to

various unwilling and unsuspecting recipients through the United States Postal Service, at least one of whom submitted a complaint to law enforcement. N.T., 9/8/21, at 35; *see Rowan v. United States Post Office Department*, 397 U.S. 728, 737-38 (1970) (upholding federal statute that permits household to remove address from mailing lists and stating that "no one has a right to press even 'good' ideas on an unwilling recipient" through the mail).

In sum, we conclude that Collins' actions here fall outside the ambit of the protection of the First Amendment. The evidence at trial was clear that Collins' poster and letters were not intended to advise the public of Hoffman's potentially dangerous driving as a result of his DUI convictions nor did they contain an educational or symbolic message regarding the harm caused to society by drunk drivers. *See Texas v. Johnson*, 491 U.S. 397 (1989) (holding that government cannot criminalize symbolic speech or expressive conduct merely because it might prove controversial or lead to a breach of the peace). Instead, Collins' speech was simply intended to shame and provoke Hoffman and direct the ire of the public on him based upon his status as an offender. That Collins' speech was not communicated directly to Hoffman and did not result in a breach of the peace is not dispositive of our analysis, as it was only the intervention of post office personnel that prevented the flyer from being distributed widely throughout the small town in which the two men

lived, and such early action likely avoided further conflict between the two men.[6]

Accordingly, we reject Collins' argument that his prosecution violated the free speech clause of the First Amendment.

**Sentence**

Collins finally argues that the sentence imposed by the trial court of 15 days' imprisonment is manifestly excessive as "the only real injury was . . . in the nature of defamation of [Hoffman's] character, rather than actual harm redressable by the criminal justice system." Collins' Brief at 20. Collins contends that the trial court's comments at sentencing, including that the behavior of Collins and Hoffman was "petty grade school nonsense," N.T., 9/9/21, at 30, were evidence that the sentence was based upon the trial court's frustration and bias towards him rather than permissible sentencing factors.

A challenge to the discretionary aspect of a sentence is not appealable as of right. *Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*).

---

[6] As stated above, Hoffman testified that he did ultimately discover the flyer at another business in the community a week after the incident at the post office. N.T., 9/8/21, at 40-41. We further note that, while the exact nature of their interaction is unclear from the record, Collins and Hoffman were each charged with harassment based upon contact between the two prior to trial, despite the terms of Collins' pre-trial release forbidding contact with Hoffman. N.T., 9/9/21, at 26; Trial Court Opinion, 1/5/22, at 13.

Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]

*Id.* (citation omitted).

Here, Collins has filed a timely notice of appeal, preserved his issue in a post-sentence motion, and complied with Rule 2119(f) by setting forth the basis for his allowance of appeal in a separate section of his brief. Therefore, we must determine whether Collins has raised a substantial question that warrants our review of his sentencing claim. A substantial question is present where the appellant advances an argument that the sentence was inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Id.* Collins' argument that his sentence was the product of trial court's bias against him constitutes a substantial question. *See Commonwealth v. Lucky*, 229 A.3d 657, 664 (Pa. Super. 2020); *Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa. Super. 2011).

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or

committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rosario*, 248 A.3d 599, 613 (Pa. Super. 2021) (citation omitted).

Furthermore,

When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Summers*, 245 A.3d 686, 693 (Pa. Super. 2021) (citation omitted). "We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Rosario*, 248 A.3d at 613 (citation omitted).

The 15-day term of incarceration imposed by the trial court was well within that permitted by law. Collins was convicted of two counts of harassment graded as summary offenses, each of which carried a maximum sentence of 90 days' imprisonment. 18 Pa.C.S. § 1105, 2709(a)(3), (c)(1). Although Collins emphasizes that he had no prior record, the sentencing guidelines do not apply to summary offenses, *see* 204 Pa. Code § 303.1(a), and therefore provide no basis on which to conclude that the sentence constituted an abuse of discretion.

- 19 -

Furthermore, upon our review of the record, we fail to discern any evidence that the sentence imposed was based upon the trial court's animus or bias towards Collins. In imposing the sentence, the trial court noted Collins' conduct towards Hoffman as well as Collins' lack of cooperation with the Pennsylvania State Police in refusing a request to avoid contact with Hoffman prior to trial. N.T., 9/9/21, at 30-31. In its opinion, the trial court emphasized that Collins refused to accept responsibility for his actions, his violation of the terms and conditions of bail while on pre-trial release by engaging in further harassment of Hoffman,[7] and the unnecessarily protracted nature of the trial based upon Collins' failure to appear on the first day of trial and his late arrival on the second day. Trial Court Opinion, 1/5/22, at 13; N.T., 9/8/21, at 1-2, 55; N.T., 9/9/21, at 1-4, 28-31. The nature of the offense, Collins' character, his defiance of the requests of law enforcement to stay away from the victim, and his indifference to the effect of his crimes were proper factors on which

_____

[7] Collins asserts that the trial court's imposition of a sentence of incarceration in part on his separate conviction before a magisterial district judgment of harassment towards Hoffman during the pendency of the case is an inappropriate basis for the sentence as the charge was withdrawn at the *de novo* trial. **See** Collins' Brief at 23-24, Appendix; **see also** N.T., 9/9/21, at 26 (District Attorney noting that Collins and Hoffman had both been convicted of summary harassment after the charges were filed in the present case but prior to trial, although Collins intended to appeal to the court of common pleas). However, the trial court did not base its sentence explicitly on the fact of his conviction but rather cited it in its opinion merely as evidence of Collins' violation of the terms of his pre-trial release, **see** Trial Court Opinion, 1/5/22, at 13, and, in any event, the charges were not withdrawn until after Collins was sentenced in the instant matter and the certified record was transferred to this Court for the instant appeal.

the trial court based the sentence. *See Rosario*, 248 A.3d at 613; *Summers*, 245 A.3d at 693.

While Collins focuses in his brief on the trial court's statement that Collins and Hoffman were engaged in "petty grade school nonsense," N.T., 9/9/21, at 30, we do not find this description to be inapt nor does it show the type of hostility towards Collins that is characteristic of the types of cases where we have vacated a sentence based upon bias or animus against the defendant. *Cf. Lucky*, 229 A.3d at 665-70 (vacating sentence where trial judge increased defendant's sentence for a technical probation violation to the maximum sentence after becoming frustrated with him during sentencing and expressed hostility toward district attorney's office when it advocated a lesser sentence); *Commonwealth v. Williams*, 69 A.3d 735, 744-49 (Pa. Super. 2013) (vacating sentence of approximately 24 to 48 years for bias where trial judge made unsupported characterizations of the defendant as a "pathological liar" and "classic sociopath" and indicated that he was judging the defendant based on her gender). Moreover, despite Collins' assertion that he was punished for both his own and Hoffman's conduct, the trial court clearly distinguished Collins' actions from those of Hoffman and emphasized that the sentence was being imposed on Collins alone. *See* N.T., 9/9/21, at 31 ("I'm not saying Alan Hoffman is any better than you. But you're the one on trial, and you're the one that I'm sentencing.").

Therefore, we conclude that the trial court's sentence was not based upon bias towards Collins and he is not entitled to relief on his discretionary sentencing claim.

Judgment of sentence affirmed.

President Judge Panella joins this Opinion.

Judge Kunselman files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2022