J-S36042-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYSHAWN PLOWDEN | : | |
| | : | |
| Appellant | : | No. 104 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 18, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0002528-2013

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    FILED AUGUST 27, 2020

Tyshawn Plowden (Plowden) appeals from the judgment of sentence imposed following his jury conviction in the Court of Common Pleas of Cambria County (trial court) of one count of person not to possess a firearm.[1]  We affirm.

I.

This case has a protracted procedural history, attributable to the fact that while it was pending, Plowden was awaiting trial on separate charges in

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).  The parties stipulated that Plowden was prohibited from possessing or using firearms during the relevant period based on an April 2011 conviction in Vermont.

other jurisdictions and was unavailable for trial in this case. We set forth only the background necessary to the disposition of this appeal.

On November 17, 2013, at about 6:00 a.m., Johnstown Police Officers responded to a report of a shooting at 304 Conway Court located in the Prospect Homes public housing community. The victim, Ramon Hernandez (Hernandez), was lying outside the rear of the residence. Hernandez had been shot in the chest and abdomen and was transported to the hospital. Police observed numerous shell casings inside the residence and bullet holes in its walls.

Destiny Vega (Vega) was at the residence when the shooting occurred. She observed a man, who she later identified as Plowden from a police photo array, at the rear door of 304 Conway Court with a gun at the time of the shooting.[2] As the shooting was happening, she saw Donnie Jones (Jones) run through the yard area to the rear of Conway Court and Gray Avenue. Police located Jones at a nearby apartment, 333 Gray Avenue, where Jasmine Hinton (Hinton) resided. Plowden was with Jones and Hinton and they were detained.

Police obtained search warrants for both 304 Conway Court and 333 Gray Avenue and executed them at approximately 1:30 p.m. that afternoon. The officers recovered a Titan .380 pistol with the serial numbers

_____

[2] The record indicates that witnesses were hesitant to make identifications for fear of retaliation.

scratched/polished off in a spare bedroom closet inside a purse and the magazine for the firearm in the master bedroom from 333 Gray Avenue. They recovered .380 and 9mm casings and bullet fragments from 304 Conway Court.

Detective Brett Hinterliter (Hinterliter) of the Cambria County District Attorney's office obtained search warrants for buccal swabs from five suspects, including Plowden, to compare to any DNA obtained from the Titan firearm. Jared Heister (Heister) of the Pennsylvania State Police Forensic DNA Division analyzed a swab of the grip and trigger of the firearm. His analysis showed that at least three individuals left DNA on the gun, and that there were two minor contributors and one major contributor to the DNA mixture. Heister determined that the major contributor matched Plowden's DNA profile.

On January 2, 2015, Plowden filed a motion to dismiss the case with prejudice pursuant to Pa.R.Crim.P. 600(D)(1) for violation of his speedy trial rights.[3] The trial court granted his Rule 600 motion and the Commonwealth appealed. On March 8, 2017, an en banc panel of this Court reversed the trial court's decision and remanded the case for further proceedings. (See Commonwealth v. Plowden, 157 A.3d 933 (Pa. Super. 2017), appeal denied, 170 A.3d 1043 (Pa. 2017)).

_____

[3] Rule 600 generally requires the Commonwealth to bring a defendant to trial within 365 days of the date the complaint was filed. See Pa.R.Crim.P. 600(A)(2)(a).

Prior to trial, in January 2019, the trial court granted Plowden's motion for the appointment of a DNA expert, Dr. Charlotte Ward. Plowden's trial was originally scheduled for June 21, 2019, but the court rescheduled it for July 11, 2019, at Plowden's request to accommodate Dr. Ward's schedule. On July 11, 2019, defense counsel requested another continuance because Dr. Ward was unavailable to testify and had not yet issued a report. The Commonwealth opposed this request and the trial court denied it.

On July 12, 2019, the jury convicted Plowden of the above-mentioned offense. On September 18, 2019, after consideration of a pre-sentence investigation report (PSI), the trial court sentenced him to a term of not less than 50 nor more than 120 months' incarceration and granted him credit for time served. Plowden filed a post-sentence motion challenging his conviction and sentence on several bases, including the discretionary aspects of his sentence and the weight and sufficiency of the evidence. The trial court held a hearing on the motion and denied it on December 16, 2019. This timely appeal followed. Plowden and the trial court complied with Rule 1925. See Pa.R.A.P. 1925(a)-(b).

II.

A.

Plowden first claims that the trial court abused its discretion in applying an incorrect offense gravity score (OGS) of ten to his offense at sentencing, instead of the correct OGS of nine, based on its finding that the firearm either

was loaded or ammunition was available. Plowden contends that this error resulted in a standard range of 48 to 60 months of incarceration for the sentence, instead of the appropriate range of 36 to 48 months. Plowden dovetails this argument with a claim challenging the court's consideration of his rehabilitative needs by asserting that because of this OGS error, his sentence is excessive and far exceeds his need for rehabilitation.

A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of a sentence. See Commonwealth v. Williams, 151 A.3d 621, 625 (Pa. Super. 2016).[4]

> It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:
>
> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

Id. (case citation omitted).

_____

[4] "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Lucky, 229 A.3d 657, 663 (Pa. Super. 2020) (citation omitted).

Plowden filed a timely appeal, he preserved the issue by raising it in his post-sentence motion, and he included a statement pursuant to Pa.R.A.P. 2119(f) in his brief. Plowden has also satisfied the fourth requirement as an allegation that the trial court incorrectly calculated an OGS raises a substantial question. See Commonwealth v. Sunealitis, 153 A.3d 414, 421 (Pa. Super. 2016).[5] To the extent Plowden combines this issue with his claim that the sentence is excessive because the court ignored his background and rehabilitative needs, an excessive sentence claim, when raised in conjunction with an assertion that the court failed to consider mitigating factors, can raise a substantial question. See Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014), appeal denied, 105 A.3d 736 (Pa. 2014) (citation omitted). We will, therefore, address Plowden's claim on the merits.

As indicated, at issue is the trial court's calculation of the OGS for the firearms offense as ten instead of nine. The operative Pennsylvania Sentencing Guidelines' provision in effect at the time of Plowden's sentencing lists the OGS of the offense as a ten, when the firearm is loaded or ammunition is available. See 204 Pa. Code § 303.15 (effective June 1, 2018, to December 6, 2019).

_____

[5] Calculation of an offender's OGS raises a question of law and we apply a de novo standard of review. See id.

At the sentencing hearing, the trial court found that the evidence supported use of an OGS of ten based on its finding that either the gun was loaded or ammunition was readily available. (See N.T. Sentencing, 9/18/19, at 4; Trial Court Opinion, 4/01/20, at 8-9). The evidence showed that the Titan .380 handgun with the serial numbers removed was recovered during the police search of 333 Gray Avenue. (See N.T. Trial, 7/11/19, at 74-75). The firearm did not have a magazine in it at that time. (See id. at 80-81). However, police located the magazine for the gun in the master bedroom of the residence. (See N.T. Trial, 7/12/19, at 28, 67). Officer Thomas Owens explained that a .380 caliber handgun had been discharged at the crime scene, as evidenced by casings found at that property. (See N.T. Trial, 7/11/19, at 84-85, 100). Corporal Robert Hagins performed six test fires of ammunition from the Titan .380 pistol, and the ballistics lab report showed that a bullet recovered from the crime scene was discharged from that same pistol. (See N.T. Trial, 7/12/19, at 89-91). Additionally, Vega's statement to police placed Plowden at the scene of the shooting with a gun and DNA matching Plowden's profile was found on the firearm. (See N.T. Trial, 7/11/19, at 191; N.T. Trial, 7/12/19, at 119) Hence, the record supports the trial court's use of an OGS

of ten based on evidence indicating that either the gun was loaded or that ammunition was available.[6]

Regarding Plowden's assertion that the trial court ignored his background and rehabilitative needs, a review of the record belies this claim. Specifically, at the sentencing hearing, defense counsel asked the court to consider a mitigated sentence on the bases that Plowden showed respect for the court, attended all court dates and is a family man who cares for his then one-year-old daughter. (See N.T. Sentencing, 9/18/19, at 5). Plowden also asked the court to take into account that he is a devoted father. (See id. at 6). The court imposed a sentence at the lower end of the standard range and explained:

> I've taken into consideration your presentence report as well as comments of counsel, the facts of the case and the jury verdict, the fact that you did show up for court. I mean I'll be very honest with you young man I really expected to be sending bench warrants out for you given the seriousness of the crime, because of your prior record there would be a lot of incentive to skip town. I do give you credit for that and quite frankly that's why I'm not going to give you a mitigated sentence, but I'm going to give you a lower and standard range sentence just because you, while I do think you're a bit of a criminal given your history, you at least are a man of your word.
>
> So I have also considered all the options of sentencing as contained in [statutory law], the fact that you do take care of your daughter . . . and sentence you to serve no less than 50 months

---

[6] We address Plowden's argument disputing that he possessed the gun in detail infra, as it is the crux of Plowden's sufficiency claim challenging the element of possession.

nor more than 120 months state correctional institute with credit for time served.

And one of the additional reasons for your sentencing too is you do seem to have a problem with firearms back in your New York matter in '06.

(Id. at 6-7).

Contrary to Plowden's assertion, the record reflects that the trial court considered all relevant factors regarding his background in formulating its sentence. Furthermore, because the court took into account the information contained in the PSI, we presume that it "was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." See Commonwealth v. Akhmedov, 216 A.3d 307, 329 (Pa. Super. 2019), appeal denied, 224 A.3d 364 (Pa. 2020) (citation omitted). Accordingly, Plowden's challenge to the discretionary aspects of his sentence fails.

B.

Plowden next disputes the legality of his sentence by asserting that the trial court failed to properly grant him credit for time served. Relying on Commonwealth v. Mann, 957 A.2d 746 (Pa. Super. 2008), he argues that the trial court abrogated its obligation to grant him credit for time served.[7]

_____

[7] "A claim asserting that the trial court failed to award credit for time served implicates the legality of the sentence." Commonwealth v. Gibbs, 181 A.3d 1165, 1166 (Pa. Super. 2018) (citation omitted). Issues relating to the

The Pennsylvania Sentencing Code, with regard to awarding credit for time served, provides in relevant part as follows:

> After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:
>
>   (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1).

The credit statute "mandates an offender receive credit for all incarceration served before sentencing for which he is being detained in custody." Gibbs, supra at 1167 (citation omitted). We have explained that "if the alleged error is thought to be the result of an erroneous computation of sentence by the Bureau of Corrections, then the appropriate vehicle for redress would be an original action in the Commonwealth Court challenging the Bureau's computation." Commonwealth v. Heredia, 97 A.3d 392, 395 (Pa. Super. 2014), appeal denied, 104 A.3d 524 (Pa. 2014) (citation omitted). If the alleged error is instead thought attributable to ambiguity in the sentence imposed by the trial court, then an action must be filed with the trial court for

_____

legality of a sentence are questions of law, over which our standard of review is de novo and the scope of review is plenary. See id.

clarification and/or correction. See id. A challenge to the sentence is cognizable as a due process claim only when a defendant challenges the legality of a trial court's failure to award credit for time served as required by law. See id.

At the sentencing hearing, the trial court expressly awarded Plowden credit for time served in this case and informed him that any credit he was entitled to would be calculated by the Department of Corrections (DOC). (See N.T. Sentencing, at 7, 9). Likewise, the sentencing order entered by the court reflects that it awarded Plowden credit for time served. (See Order, 9/18/19).

Plowden's true allegation of error then is that the DOC failed to follow the court's sentence as imposed. Because Plowden actually seeks enforcement of the sentencing order, we agree with the trial court and the Commonwealth that the appropriate mode of action is a filing before the Commonwealth Court after exhausting administrative remedies in the DOC to challenge its calculation of time served in this case. (See Trial Ct. Op., at 9; Commonwealth's Brief, at 15). Because the trial court appropriately awarded Plowden credit for any time served in this case, Plowden's challenge to his sentence fails.[8]

_____

[8] Plowden's reliance on Mann, supra, is misplaced because the facts are inapposite. In Mann, the trial court granted the defendant no credit for time served and this Court remanded the case with instructions for the court to issue a sentencing order granting time served.

C.

Plowden next challenges the sufficiency of the evidence supporting his conviction, arguing that the Commonwealth failed to establish that he possessed the .380 handgun recovered from 333 Gray Avenue.[9] Plowden claims that the firearm was merely found in the residence that he was in on the morning in question and that there are no fingerprints on the firearm connecting him to it. Plowden also points to perceived weaknesses in the Commonwealth's case in that it presented testimony from the responding officers but not from any witness who actually observed him possess the firearm.

The Crimes Code defines the offense of Persons Not to Possess Firearms as "(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length

_____

[9] In Commonwealth v. Parrish, 191 A.3d 31, 36 (Pa. Super. 2018), appeal denied, 202 A.3d 42 (Pa. 2019):

> We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. Because evidentiary sufficiency is a matter of law, our standard of review is de novo and our scope of review is plenary.

(Citations and question marks omitted).

of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control . . . a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). Because the parties stipulated that Plowden was disqualified from possessing a firearm under the first element of the offense, he only challenges the remaining element, i.e., that he actually possessed the handgun.

The Crimes Code defines the term "possession" as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c). Illegal possession of a firearm may be established by constructive possession:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.
>
> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.

Commonwealth v. McClellan, 178 A.3d 874, 878 (Pa. Super. 2018) (citations omitted).

Officer Owens testified to Vega's statement placing Plowden at the scene of the shooting in possession of a gun. (See N.T. Trial, 7/11/19, at 191). Police recovered a .380 handgun and its magazine from the same residence

Plowden was in immediately after the shooting. (See N.T. Trial, 7/11/19, at 37; N.T. Trial, 7/12/19, at 26, 28). Bullet fragments found at the scene of the shooting were traced to this handgun through ballistics evidence. (See N.T. Trial, 7/11/19, at 84-85, 100; N.T. Trial, 7/12/19, at 89-91). This same firearm had Plowden's DNA on it.

As touched upon above, Heister testified to his finding that at least three individuals had left DNA on the gun. Heister explained that DNA analysis on swabs taken from guns makes up a large component of his work, and that he regularly sees mixtures of DNA on guns because "these are items that are typically not clear ever . . . and the swabs from guns we get are mixtures, which means two or more people present." (N.T. Trial, 7/12/19, at 110). Regarding the firearm in this case, there were two minor contributors to the DNA that was found on the gun and one major contributor. Heister determined that the DNA of the major contributor "matches the DNA profile that was obtained from Tyshawn Plowden" and that "it would be statistically improbable to assume that it came from anybody other than Mr. Plowden." (Id. at 118-19). The minor components of the DNA were uninterpretable. (See id. at 116).

Defense counsel attempted to undermine the strength of this testimony by emphasizing that there were at least three contributors to the DNA sample and by raising the possibility that Plowden's DNA was found on the gun because of a secondary transfer of his DNA. (See id. at 124-127, 136).

Although Heister acknowledged that secondary transfers are possible, he explained that a considerable amount of DNA is needed to collect a reportable full profile. (See id. at 125-26).

After review of the record, we conclude that the DNA and other evidence supports the jury's finding that Plowden constructively possessed the handgun. The totality of the circumstances went well beyond showing that Plowden was merely present at the apartment where the gun was found and instead demonstrated his control of the gun. Plowden's sufficiency claim merits no relief.

D.

Plowden also challenges the weight of the evidence supporting his conviction.[10] Plowden's argument rests on his reiteration of his claims that

_____

[10] In Commonwealth v. Soto, 202 A.3d 80, 97 (Pa. Super. 2018), appeal denied, 207 A.3d 291 (Pa. 2019):

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

the evidence established that he was merely present in the home where the handgun was found, there was a dearth of eyewitness testimony at trial, and the DNA evidence was not conclusive.

Following review of the record and mindful of our deferential standard of review, we discern no abuse of discretion in the trial court's decision to deny relief on Plowden's weight claim. The court appropriately concluded that the jury's guilty verdict on the firearms offense was not shocking to the conscience and was not so contrary to the evidence as to require a new trial. Further, we decline to reassess or reweigh the testimony and evidence presented at trial, which was for the jury, as fact-finder, to assess. Accordingly, Plowden's challenge to the weight of the evidence fails.

_____

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

(Citations and quotation marks omitted).

E.

Plowden next contends that the trial court erred in failing to dismiss this case because of a double jeopardy violation. The foundation of his argument is that the trial court granted his Rule 600 motion on January 6, 2015, and dismissed the charges against him with prejudice. Plowden then relies on a January 16, 2015 entry on the trial court docket that he asserts evidences the District Attorney's withdrawal of the charges, barring the Commonwealth from prosecuting him for this offense.[11]

"The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense." Graham, supra at 736. Plowden concedes that this Court reversed the trial court's ruling on his Rule 600 motion and remanded the case for further proceedings on March 8, 2017. Notwithstanding this procedural posture, Plowden maintains that the notation on the docket made more than two years earlier, on January 16, 2015, controls. This notation is for a letter from the superintendent of the Clinton Correctional Facility located in Dannemora, New York, to the Cambria County Clerk of Court, indicating that the detainer for

_____

[11] "An appeal grounded in double jeopardy raises a question of constitutional law." Commonwealth v. Graham, 109 A.3d 733, 736 (Pa. Super. 2015). This Court's scope of review in making a determination on a question of law is plenary and our standard of review is de novo. See id.

Plowden was being returned. The letter states that the detainer "is being returned to you because the Office of the District Attorney has hereby withdrawn criminal action." (See Clinton Correctional Facility Letter, 1/16/15).

As the trial court explained, "this letter cannot serve as the Commonwealth's withdrawal of any charges as it was not authored by the Cambria County District Attorney but rather by a correctional facility in New York and addressed to the Cambria County Clerk of Court. The letter only indicates the reason for the return of a detainer placed on Plowden as the Clinton Correctional Facility understood it." (Trial Ct. Op., at 19). Thus, since the Commonwealth did not withdraw the charge against Plowden and instead demonstrated its intent to fully pursue it by filing an appeal of the trial court's Rule 600 decision, there is no double jeopardy issue. Plowden's argument to the contrary merits no relief.

F.

In his final claim, Plowden challenges the trial court's denial of his request for a continuance on grounds that his DNA expert, Dr. Ward, was not available for trial and had not yet provided her expert report. Plowden argues

that this ruling prejudiced him because he did not have the benefit of his own expert at trial where DNA evidence was crucial to his defense.[12]

"A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." Ross, supra at 91 (citation omitted). Instead, an appellant must establish prejudice and demonstrate in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. See id.

> This Court has observed that trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. However, the trial court exceeds the bounds of its discretion when it denies a continuance on the basis of an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. Accordingly, we must examine the reasons presented to the trial court for requesting the continuance, as well as the trial court's reasons for denying the request. . . .
>
> When deciding a motion for a continuance to secure a material witness, the trial court is guided by the following factors:
>
> (1) the necessity of the witness to strengthen the party's case; (2) the essentiality of the witness to the party's case; (3) the diligence exercised to procure the witness' presence at trial; (4) the facts to which the witness could testify; and (5) the likelihood that the witness could be produced at the next term of court.

_____

[12] "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." Commonwealth v. Ross, 57 A.3d 85, 91 (Pa. Super. 2012), appeal denied, 72 A.3d 603 (Pa. 2013) (citation omitted).

Commonwealth v. Norton, 144 A.3d 139, 143–44 (Pa. Super. 2016) (citations omitted).

Here, the record reflects that on January 8, 2019, the trial court granted Plowden's motion for the appointment of Dr. Ward as the defense DNA expert. On May 3, 2019, the court entered an order granting Plowden's request to pay Dr. Ward's retainer. The Commonwealth thereafter filed a motion seeking reciprocal discovery, including of any defense expert reports and it provided Plowden with its DNA report on June 3, 2019. Trial was originally scheduled for June 21, 2019, was rescheduled for July 11, 2019, at Plowden's request to accommodate Dr. Ward's schedule.

On July 11, 2019, at the outset of trial, defense counsel requested another continuance because Dr. Ward was unavailable to testify and had not issued a report. (See N.T. Trial, 1/11/19, at 4, 6). The Commonwealth objected on the basis that the case had already been continued to accommodate Dr. Ward's schedule and it had not received her report. (See id. at 5-6). The trial court denied the motion for a continuance "since we don't even have a report. We don't know if it's positive, negative, exculpatory or what, so we're going to proceed. If something happens today or tomorrow and a witness needs [to be] taken out of order, you do receive a report or whatever, we'll certainly accommodate." (Id. at 7).

In its opinion, the trial court again explained that it denied Plowden's motion because no expert report had been prepared and it agreed to

accommodate Dr. Ward if circumstances changed and she was able to testify by any means. (See Trial Ct. Op., at 20-21). Defense counsel raised no objection to the denial and there were no further discussions during trial relative to Dr. Ward or her testimony. (See id.).

Additionally,

> [Plowden] has not explained how he would have prepared differently if the continuance had been granted. . . . Ward's involvement in the case began in January 2019 when Plowden's motion to appoint an expert was granted. . . . As of trial Ward had yet to provide defense counsel with a report or even indicate to him what her testimony would encompass. Based on defense counsel's inability to make an offer of proof relative to Ward's testimony the court denied the continuance request and provided the defense the option to have Ward testify by alternative means once she provided a report. Defense counsel did not avail himself of this option nor raise the issue of Ward's testimony again. As such Plowden cannot establish that he was prejudiced by the court's denial of his continuance where he cannot establish what Ward's testimony would have been or how the lack of that testimony impacted his case.

(Id. at 21-22) (record citations omitted).

Based on the foregoing, we conclude the trial court did not abuse its discretion in denying Plowden's eleventh hour request for a second continuance relating to Dr. Ward where he had ample time to secure her presence and the court was plainly willing to accommodate her during the already rescheduled trial. Plowden's final issue merits no relief.

Judgement of sentence affirmed.

- 21 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2020