J-A03003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDULLATEEF MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 1676 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 5, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000335-2019

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 2, 2023**

Abdullateef Muhammad ("Appellant") appeals from the judgment of sentence of four to eight years' incarceration entered in the Court of Common Pleas of Philadelphia County after the court revoked his probation for multiple technical violations of his probation.  Herein, Appellant challenges the discretionary aspects of his sentence, and the Commonwealth contends that this Court should quash the present appeal as untimely filed.  After careful review, we affirm on the merits.

The revocation court sets forth the relevant facts and procedural history, as follows:

> [Appellant] entered a negotiated guilty plea to robbery as a felony in the first degree in exchange for a sentence of eleven and a half to twenty-three months of incarceration, with immediate parole, followed by two years' probation on November 15, 2019.

---

[*] Former Justice specially assigned to the Superior Court.

[The trial court] accepted Appellant's plea, but deferred sentencing and ordered a pre-sentence investigation and mental health evaluation. [The trial court] imposed the negotiated sentence on January 17, 2020, but, based on the contents of the mental health and pre-sentence investigation reports, imposed additional probation conditions.

Specifically, [the trial court] ordered Appellant to complete parenting classes and grief counseling and to submit random drug screens. At the sentencing hearing, [the trial court] explained to Appellant that if he failed to complete any of those additional conditions, he would be in violation of his probation and [the trial court] would be able to re-sentence him to up to twenty years of incarceration. Appellant verbally confirmed that he understood. **See** [N.T., 1/17/20, at 14-15].

[Fourteen days later,] Appellant tested positive for THC on January 31, 2020, and [tested positive for THC again on] February 20, 2020. On February 20, 2020, [the trial court] continued Appellant's supervision with the additional requirements that Appellant submit to random drug screens that included testing for K2 and PCP and that he complete grief and parenting counseling.

Appellant tested positive for THC and benzodiazepine on March 6, 2020. [The trial court] ordered Appellant to complete a mental health evaluation on September 4, 2020.

[The trial court] found that Appellant was not complying with the court-ordered conditions of his probation on November 13, 2020. On December 16, 2020, Appellant was found to be in technical violation of his probation after his probation officer reported that he did not comply with [the trial court's] orders by failing to appear at the courthouse for the collection of a DNA sample and undergo parenting classes. He also failed to appear for his court-ordered mental health evaluation and ignored the probation officer's repeated attempts to contact him. Upon the joint request of the Commonwealth, the probation officer, and counsel for defense, [the trial court] issued a bench warrant at that hearing. N.T., 12/16/20.

On June 11, 2021, [the trial court] revoked Appellant's probation and imposed a new sentence of four years of reporting probation. On July 15, 2021, Appellant was further ordered to participate in

outpatient substance abuse treatment at a CHANCES and to stay at a recovery house.

On July 20, 2021, Appellant was again found to be in technical violation of his probation and a detainer was issued. On July 28, 2021, this court ordered Appellant to be transported to the Joy of Living Recovery Program when a bed became available. [The trial court] again ordered Appellant to complete grief and parenting classes on August 26, 2021.

Appellant was once again found to be in technical violation on September 21, 2021, for failing to comply with [the trial court's] orders to stay at Joy of Living Recovery Center and get and maintain employment. A detainer was issued. On April 5, 2022, [the trial court, hereinafter "revocation court"] revoked Appellant's probation and imposed a new sentence of four to eight years of incarceration with credit given for time served.

Appellant filed a motion for reconsideration of sentence on April 8, 2022. The docket reflects that [the revocation court] entered two orders denying Appellant's motion to reconsider: one dated April 12, 2022, and one dated May 31, 2022. Appellant filed a notice of appeal to the Superior Court on June 28, 2022, and a concise statement of errors complained of on appeal on July 1, 2022.

Trial Court Opinion, 8/8/22, at 1-3.

Appellant raises the following questions for this Court's consideration:

1. Was the sentence of Judge Perez of four to eight years of incarceration on a probation violation plus two years' probation, excessive, harsh and an abuse of discretion? Did the excessive sentence present a substantial question and issue since it exceeded the normal sentencing guidelines? Was the sentence extremely harsh under the circumstances when there was an offense gravity score of 10 and a prior record score of 0 on the underlying robbery case, with a sentencing guideline range of 22-36 months of incarceration plus or minus 12? Was this an abuse of discretion since the sentence was above the guidelines, at the top of the aggravated range, far above the recommendation of the District Attorney's Office, where there were only technical violations and was this an abuse of discretion by the trial judge? Did Judge Perez fail to

state adequate reasons in support of this sentence, particularly since there were only technical violations and did the Judge failed [sic] to properly discuss and weigh the factors in 42 Pa.C.S.A. § 9721(B)? Did Judge Perez err by stating she earlier promised a four-to-eight years sentence? Should this sentence be reversed as an abuse [of] discretion and excessive, and should the sentence be remanded to another Judge for resentencing?

2. Did the Superior Court err in suggesting the appeal should be dismissed since the appeal was filed within 30 days of the denial of the Motion to Modify the Sentence, since the Judge did not decide the Motion until 30 days had passed from the sentencing date? Should this Honorable Court treat Mr. Stretton's Answer to the Rule to Show Cause, issued by this Honorable Court, as a request to grant a Nunc Pro Tunc appeal and allow this appeal to continue?

Brief for Appellant, at 10-11

We begin by determining whether we have appellate jurisdiction over Appellant's challenge to the discretionary aspects of his sentence. Our jurisdiction to hear such a challenge is discretionary, and we may not exercise our discretion to review such an issue unless we first determine that: (1) the appeal is timely; (2) Appellant preserved his issue; (3) Appellant's brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentences, as required by Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure; and (4) that concise statement raises a substantial question that the sentences were inappropriate under the Sentencing Code. *Commonwealth v. Flowers*, 149 A.3d 867, 870–71 (Pa. Super. 2016). Only if the appeal satisfies each of these prerequisites may we accept jurisdiction and proceed to the substantive merits of the case. *Id*.

- 4 -

Appellant has satisfied the second, third, and fourth threshold requirements by, respectively, having filed below a timely post-sentence motion challenging the discretionary aspects of his revocation sentence, providing separately in his appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon in seeking our review of the discretionary aspects of his sentence, and asserting therein a substantial question with the claim that the revocation court failed to state on the record during sentencing adequate reasons to support the aggravated range sentence imposed. *See Commonwealth v. Lucky*, 229 A.3d 657, 664 (Pa. Super. 2020), *citing* **Commonwealth v. Sierra**, 752 A.2d 910, 913 (Pa. Super. 2000) ("On appeal from a revocation proceeding, … a substantial question is presented when a sentence of total confinement, in excess of the original sentence, is imposed as a result of a technical violation of parole or probation."). **See also  Commonwealth v. Allen**, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question.") (citations omitted); **Commonwealth v. Caldwell**, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*) ("an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factor—raises a substantial question.")

However, the first threshold requirement that the appeal must be timely is an open question raised for our consideration in the second enumerated issue in Appellant's brief.  Specifically, the parties dispute whether this Court

- 5 -

has jurisdiction over the present appeal because Appellant filed, through counsel, a facially untimely June 28, 2022, notice of appeal from the revocation court's April 5, 2022, judgment of revocation sentence of probation.

It is beyond dispute that a defendant has no more than 30 days from the date of imposition of a revocation sentence in which to file a direct appeal, regardless of whether they have filed a timely motion to modify sentence. *See* Pennsylvania Rule of Criminal Procedure 708(E) governs motions to modify sentence filed after a violation of probation, intermediate punishment, or parole, and it provides, "A motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. *The filing of a motion to modify sentence will not toll the 30-day period.*" (emphasis added); *See Commonwealth v. Coleman*, 721 A.2d 798, 799, fn. 2. (Pa. Super. 1998); *Commonwealth v. Parlante*, 823 A.2d 927, 929 (Pa. Super. 2003) (an appellant has 30 days to appeal their revocation-of-probation sentence from the day the sentence is entered; even if an appellant files a motion to modify their revocation sentence, the appellant does not receive an additional 30 days to file an appeal from the date their motion is denied).

Because Appellant's counseled notice of appeal is patently untimely, this Court raised the issue *sua sponte* in our order issuing a Rule to Show Cause why we should not quash this facially untimely appeal pursuant to Pa.R.Crim.P. 708(E). Counsel filed an Answer to the Rule to Show Cause in which he argued that quashing the present appeal would result in an

unfortunate delay of merits review of what he believes is an unjust and excessive four-to-eight-year revocation sentence imposed upon a defendant with demonstrated addiction and grief issues and to whom the Commonwealth originally offered a negotiated plea deal of 11 ½ to 22 months incarceration.

Counsel explained that he was unaware that a timely filed motion to reconsider a revocation sentence did not toll the 30-day appeal period, and he maintained that he simply did what he always has done in his 49-years' post-trial practice experience, which is to file a motion to modify sentence and, under the assumption that the filing tolls the appeal period, wait for the Judge to act on the motion before deciding whether to file an appeal. On November 9, 2022, we issued an order deferring resolution of this issue to a panel of this Court.

In the Brief for Appellant, Counsel reiterates that he did not know that a motion to modify a revocation sentence fails to toll the 30-day appeal period pursuant to Rule 780(E). This admission, he contends, supports Appellant's position that Counsel provided an inaccurate advisement[1] of appeal rights at the conclusion of the April 5, 2022, sentencing hearing when he informed Appellant, "You have 30 days from today's date or if I file a petition to modify

_____

[1] The revocation court directed Counsel at the end of the hearing to advise Appellant of his post-trial and appeal rights. N.T. at 17-18.

or reconsider the sentence, 30 days to file an appeal to the Superior Court of Pennsylvania." N.T., 4/5/22, at 17-18.[2]

Counsel also disputes that he received service of the revocation court's April 12, 2022, docketed order denying Appellant's April 8, 2022, motion for reconsideration. Instead, he claims, he received service of only the revocation court's May 31, 2022, order denying his April 5, 2022, motion. It was from this order, Counsel asserts, that he timely filed notice of appeal on June 28, 2022.

The Commonwealth responds that this Court lacks jurisdiction because Appellant filed an untimely notice of appeal more than 30 days after the imposition of sentence or, in the alternative more than 30 days after the revocation court filed its April 12, 2022, order denying Appellant's motion for reconsideration. It posits that we should reject Counsel's claim of lack of service because the First Judicial District of Philadelphia is an electronic filing jurisdiction in which attorneys are required to have an e-filing account and, thus, presumed to receive service of all criminal case papers, motions, and orders submitted through the electronic filing system. To this end, the Commonwealth cites to several subsections of the Rules of Criminal Procedure, including Rule 576.1(D)(2), which provides that an attorney with

_____

[2] Counsel insists that the transcription of this exchange is "garbled" and represents an incomplete recording of the latter part of his advisement, as he asserts that he advised incorrectly that if he filed a timely motion to reconsider the revocation sentence on Appellant's behalf, the 30-day appeal period would commence from the date of a trial court order denying the motion.

an e-file account consents to participate in electronic filing and accepts electronic service of documents filed in the system, and Rule 576.1(H)(1), which acknowledges that filing papers in an electronic filing system satisfies service requirements set forth under Rules 114(B) (pertaining to service of court orders and court notices) and 576(B) (pertaining to service of party filings).

Consequently, the Commonwealth contends that because Appellant, through Counsel, received notice of the revocation court's April 12, 2022, order denying his April 8, 2022, motion for reconsideration, his June 28, 2022, notice of appeal should be deemed untimely and his present appeal quashed.

After careful consideration of this jurisdictional issue, we decline to quash the present appeal, as we identify grounds to conclude that a breakdown in the process of the revocation court occurred both at Appellant's revocation sentencing hearing and when the revocation court's April 8, 2022, order denying his motion for reconsideration was docketed. Generally, an appellate court cannot extend the time for filing an appeal, but it may grant relief when there is a breakdown in the process of the trial court. **Commonwealth v. Patterson**, 940 A.2d 493, 498–99 (Pa. Super. 2007). A breakdown in the processes of the court occurs "when the trial court or the clerk of courts depart[s] from the obligations specified in" Rules of Criminal Procedure. **See id.** at 499; **accord Parlante**, 823 A.2d at 929 (declining to quash the appeal because of a breakdown in the court's operation).

We first address whether Appellant received at the conclusion of the revocation sentencing hearing a clear and correct advisement of the time within which he was required to file a direct appeal. Under our Rules of Criminal Procedure, "The judge shall advise the defendant on the record ... of the right to file a motion to modify sentence and to appeal, *[and] of the time within which the defendant must exercise those rights.*"  Pa.R.Crim.P. 708(D)(3)(a) (emphasis added). The record reveals, however, that the revocation court delegated to Counsel the responsibility to advise Appellant of such rights, and it thereafter remained silent during what the record shows was either an incoherent or incorrect advisement.

While we are unable to discern definitively whether the transcription accurately recorded an incoherent advisement or inaccurately omitted essential portions of a clear but incorrect advisement,[3] we are satisfied from the record that one of these two possibilities occurred without remedial action taken by the revocation court. Therefore, in either case, the advisement was inadequate to satisfy the revocation court's obligation under Pa.R.Crim.P. 708(D)(3)(a) to advise Appellant of his post-sentence and appellate rights and corresponding filing time periods. Consequently, we may not rely on this basis

---

[3] On the latter possibility of an incomplete transcription of a clear but incorrect advisement, which Counsel claims occurred, we note that the transcribed advisement's apparent transition from identifying the general 30-day appeal period commencing at the imposition of sentence to noting another 30-day period relating to a motion for reconsideration does allow for the reasonable inference that Counsel mistakenly advised that two distinct 30-day periods, commencing at different times, existed.

to quash. **See Flowers**, 149 A.3d at 871 (holding a sentencing advisement providing misinformation regarding appeal deadline constituted breakdown in judicial process and excused the defendant's late filing of appeal).

As noted, *supra*, the Commonwealth offers an alternate argument for quashal. Because Counsel presumptively received service of the revocation court's April 12, 2022, order denying his April 8, 2022, motion for reconsideration through Philadelphia County's electronic filing system, and the certified record reflects that a corresponding entry of the order was docketed, his failure to file an appeal to this Court within 30 days of such service should result in quashal. We disagree that the record supports this claim.

Pennsylvania Rule of Criminal Procedure 114(C), "Docket Entries", requires, in relevant part, that "The docket entries *shall* contain: . . . (c) the date of service of the order or court notice." Pa.R.Crim.P. 114(C)(2)(c). A court's compliance with Rule 114 is not discretionary. **See Commonwealth v. Hess**, 810 A.2d 1249, 1253 (Pa. 2002). Our review of the certified record reveals that while the revocation court's April 8, 2022, order itself was entered on the docket, the order bears no indication of the date of service. Accordingly, we find no merit to the Commonwealth's argument that the revocation court's order complied with the Rules of Criminal Procedure.

Turning, then, to the merits of Appellant's appeal, we observe that he claims his four to eight year revocation sentence reflects an abuse of the revocation court's discretion and raises substantial questions because it

- 11 -

resides in the sentencing guideline's aggravated range,[4] exceeded the Commonwealth's original negotiated deal of a county sentence (11 ½ to 23 months), and was entered not in consideration of Appellant's rehabilitative needs or recent changes he had made in his life but, instead, simply to keep the court's previous promise of a four to eight year sentence if he violated his probation one more time.

Our standard of review for the revocation of probation is an abuse of discretion. *See Commonwealth v. Giliam*, 233 A.3d 863, 866-67 (Pa. Super. 2020). Our scope of review is limited to reviewing whether the reason for the revocation proceeding is valid, the legality of the sentence, and the discretionary aspects of sentencing. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1033-34 (Pa. Super. 2013) (*en banc*).

This Court has discussed the reasons supporting our deferential standard of review of sentences imposed following revocation of probation:

> [A] trial court has broad discretion in sentencing a defendant, and concomitantly, the appellate courts utilize a deferential standard of appellate review in determining whether the trial court abused its discretion in fashioning an appropriate sentence. The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript

---

[4] The standard guideline range applicable to Appellant was 22 to 36 months of incarceration, plus or minus 12 months. The court's imposition of a 48-month minimum sentence was within the aggravated range of the guidelines.

used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.[A.] § 9721.

Upon revoking probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.[A.] § 9771(b). Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence, although once probation has been revoked, the court shall not impose a sentence of total confinement unless it finds that:

> (1) the defendant has been convicted of another crime; or
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.[A.] § 9771(c).

Moreover, 42 Pa.C.S.[A.] § 9721(b) specifies that in every case following the revocation of probation, "the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *See also* Pa.R.Crim.P. 708([D])(2) (indicating at the time of sentence following the revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed.").

However, following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where [ ] the trial judge had the benefit of a [presentence investigation ("PSI") report] during the initial sentencing proceedings.

*Commonwealth v. Pasture*, 107 A.3d 21, 27-28 (Pa. 2014) (case citations, footnote, and some quotations omitted). Furthermore, "[t]echnical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate [a resistance] to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007).

The crux of Appellant's argument is that the revocation court could not have engaged in a full consideration of Appellant's rehabilitation needs and mitigating circumstances, or of what minimum sentence was required to protect the community, when it acknowledged at the revocation hearing that the sentence was a fulfillment of the promise made at the previous hearing to impose a revocation sentence of four-years' incarceration on the underlying armed robbery charge should he violate again. After review of the record

before us, however, we do not agree that the court's statement manifests a snap judgment unmoored from a careful contemplation of Appellant's entire relevant history.

There is before us a lengthy record of the court's repeated efforts to afford Appellant opportunities for drug treatment only to learn time and again that Appellant was testing positive for banned substances. Indeed, Counsel acknowledges that "Judge Perez was certainly trying to help [Appellant ,]" but that "[Appellant] was not dealing with [his drug problem] well enough." Brief for Appellant at 33. He continues, "Unfortunately, the Judge kept bringing him back for status hearings and essentially set him up to fail. There were technical violations along the way over the last two years of changing the halfway house, not completing the drug program, etc. There were also multiple times where he tested positive for marijuana. He had been sentenced originally on an armed robbery, so it was a serious case." Brief for Appellant at 33.

At the outset of the revocation sentencing hearing, the revocation court observed that it was quite familiar with Appellant's history and had taken "copious notes, especially with Mr. Muhammad. We've spent some time together." N.T. at 6. It listened to Appellant's exchange with Counsel in the form of an allocution in which Appellant explained what he had learned from trying to cope with his drug addiction, living both in prison and out of prison on probation, dealing with compliance problems in halfway houses, making bad choices in the company he kept, and the resulting effects on his family

relationships—particularly with his young son, and he indicated he realized now that he needed to change. N.T. at 5-12.

At the conclusion of Appellant's allocution, the revocation court shared the reasons that informed its sentencing decision:

> **The Court:** Mr. Muhammad and I have been together for quite some time now. In fact, my entire file is just about him going in and out [of] noncompliance and I agree 100 percent with [The prosecutor] because this [Appellant's] last chance. I said that to Mr. Muhammad multiple times. I never particularly liked the terms of this plea to begin with. I didn't like the facts of this case and I took a chance on Mr. Muhammad and sometimes you take a chance on people and they step up.
>
> I put every service in place. My file has dual diagnosis FIRs as recently as last year, and all I hear is what Mr. Muhammad wants to do versus what he doesn't want to do. ["]I don't want to be in a halfway house. I sometimes behave and other times I do just to get through probation, and other times I just walk away and told you and my probation officer that I don't have time for you.["]
>
> Here's where you and I are fundamentally different, Mr. Muhammad. I'm going to keep my promise. I let you know what the consequences were going to be for your actions of continuing to walk away from myself and the probation officer and you made a choice that that is what you were going to do. You want to make choices about where you want to lay your head down at night. You want to make choices as to whether or not you want to participate in drug treatment. What happens, though, is that you decide whether or not I'm going to be involved in your life. Frankly, I should have been terminating your supervision. You could have been done with me.
>
> In the end, life is about the choices that we make. So, the question is, was being at the halfway house when I court mandated it so important that you leave that you were willing to risk a state sentence, and you said yes. I have over here multiple times as recently as June of last year that if you did not comply, you and I had a conversation that I would sentence you to 4 to 8 years of state incarceration.

. . .

Your guidelines were 22 to 36 months plus or minus 12. Eleven and half to 23 was below the guidelines. Four to eight is aggravated, but in the guidelines.

I have seen nothing in the time that we've been together, Mr. Muhammad, that tells me that you are an individual who benefits from community supervision. At this point, based on the previous revocation, based on the technical violations that were outlined previously, and that, I believe, if I recall correctly, I'll double check my file, Mr. Stretton, do you agree that he was in technical violation due to his discharge, his lack of anger management and grief counseling completion, as well as his walking away from the halfway house. Am I correct?

**Mr. Stretton:** Unfortunately, I have to agree.

**The Court:** Based on all of those things, I am going to, on the robbery F1, issue a new sentence of 4 to 8 years of state incarceration. All supervision is to be done by the state. Credit for time served.

N.T. at 13-16.

Upon review, we discern no abuse of discretion by the revocation court in imposing an aggregate sentence of 4 to 8 years' incarceration following revocation of Appellant's probation. The record of the revocation sentencing hearing shows the revocation court possessed a full understanding of the relevant facts of this case as they related not only to his noncompliant behavior while under supervision but also to how his revocation sentence would affect his family. Indeed, the revocation court had been surprisingly lenient with Appellant.

Moreover, though not stated explicitly, it is apparent that the revocation court imposed a sentence of total confinement because it was essential to

vindicate the authority of the court. ***See*** 42 Pa.C.S.A. § 9771(c)(3); ***Commonwealth v. Cappellini***, 690 A.2d 1220, 1226 (Pa. Super. 1997) (finding trial court was "not required to parrot the criteria of the Sentencing Code" so long as record supported determination that sentence was essential to vindicate its authority).

Appellant's poor choices and failures to comply with court orders while under long-term supervision showed that he would not respect the authority of the court or fully commit to his own recovery. His flagrant technical violations thus demonstrated an inability or unwillingness to reform that supported the revocation court's sentence of total confinement. ***See Carver***, ***supra***. Accordingly, we find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2023