J-A11004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINDSEY ANN MELNICK | : | |
| | : | |
| Appellant | : | No. 1157 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 21, 2023
In the Court of Common Pleas of Perry County Criminal Division at
No(s): CP-50-CR-0000061-2022

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED: JULY 17, 2024**

Lindsey Ann Melnick appeals from the aggregate judgment of sentence of six to twelve years of imprisonment imposed for her convictions of statutory sexual assault, aggravated indecent assault—complainant less than sixteen, unlawful contact with a minor, institutional sexual assault, and corruption of minors. We affirm.

The trial court aptly summarized the evidence offered at Appellant's jury trial as follows:

> At trial, the victim, A.H. testified that, between August 1, 2011, and November 25, 2012, [Appellant] engaged in sexual conduct with her on numerous occasions, when she was only fourteen and fifteen years old. At the time the inappropriate relationship began, Appellant was approximately twenty-five years of age, and one of the teachers' aides, and girls' soccer coaches for A.H.'s middle school, as well as a camp counselor for A.H.'s church camp. During their time at church camp, . . . Appellant would sneak into A.H.'s bunk, or have A.H. sneak into

her bunk, and Appellant would perform sexual acts such as groping, kissing and digital penetration.

A.H. testified that after church camp, the encounters with Appellant became more frequent and more sexual, as Appellant would drive A.H. home from school, soccer practice, and church events. Appellant would also text A.H. at times to arrange to pick A.H. up, and drive her to a pull-off on Pine Hill Road, Perry County, where Appellant would park the vehicle, perform oral sex on A.H., and have A.H. perform oral sex on her.

[A.H.]'s mother T.S., was aware of an inappropriate[1] relationship between the [Appellant] and her daughter, and attempted to end all communication and contact between the two. T.S. and her husband found inappropriate messages and contact between Appellant and A.H. on A.H.'s cellphone and a Facebook account, where Appellant used the pseudo[nym] Sophia Martin, to communicate with A.H. T.S. went on to explain an instance where Appellant came to their home, unwelcomed, and tried to give A.H. a birthday present. During this incident, T.S. met with Appellant and told her not to come back to their home or contact their family ever again. T.S. also testified about the details and layout of her property and home. The victim testified that after her parents discovered the inappropriate teacher/student relationship, the sexual contact between Appellant and A.H. took place on several occasions after Appellant snuck into A.H.'s parents' home and hid under A.H.'s bed.

_____
[1] A.H.'s parents became aware of an inappropriate relationship between A.H. and Appellant. However, they were unaware of the sexual nature of said relationship at the time the offenses were being committed.

[Appellant] pointed out inconsistencies in the victim's testimony, and presented the testimony of multiple individuals who testified that [Appellant] was a person of good character who was law abiding. These individuals spoke about [Appellant]'s ties to her community and her religious organizations. [Appellant] also introduced video evidence and a posterboard showing the general layout of the very rural area surrounding A.H.'s home, where many of the assaults took place, the driveway to the home, and the road and general area leading to the home in an attempt

to convince the jury [that Appellant] could not have snuck into the home as the complainant stated.

Trial Court Opinion, 10/24/23, at 2-4 (cleaned up, unnecessary articles omitted).

The jury found Appellant guilty of the above-referenced offenses, and she was sentenced on March 15, 2023, following a pre-sentence investigation ("PSI"). Appellant filed a timely post-sentence motion that the trial court granted in part and denied in part. Specifically, while the trial court declined to disturb her convictions or the term of her incarceration, it granted a new sentencing hearing as to her sexual offender registration requirements. Appellant's new sentencing was completed on July 21, 2023, and this timely appeal followed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement and she timely complied, after which the trial court authored a Rule 1925(a) opinion.

Appellant presents the following questions for our determination:

A.   Whether the trial court palpably abused its discretion by denying [Appellant]'s request for a new trial where the verdict was against the weight of, and so contrary to, the evidence as to shock one's sense of justice, thus requiring that a new trial be granted?

B.   Whether the pretrial decision to deny [Appellant]'s request for a view constituted an abuse of discretion, an error of law, and so impeded [Appellant]'s defense as to constitute a violation of [her] right to a fair trial, to present a complete defense, and to due process of law, as guaranteed by the Fifth, Sixth[,] and Fourteenth Amendments of the United States Constitution, and Article 1, §§ 1 and 9 of the Constitution of the Commonwealth of Pennsylvania, thus requiring that [Appellant] be granted a new trial?

C.    Where the sentencing court: (a) failed to consider the character of [Appellant]; (b) failed to assess issues relevant to individualized sentencing; (c) failed to assess those factors set forth in the Sentencing Code required to be considered when determining the nature of the sentence to be imposed; (d) focused solely on the nature of the offenses; and (e) imposed an unreasonable and manifestly excessive sentence, should [Appellant]'s sentence be vacated and the matter remanded for re-sentencing?

Appellant's brief at 8-9 (cleaned up).

Appellant first asserts that the trial court abused its discretion in denying her challenge to the weight of the evidence. The following principles apply to our consideration of that claim:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).

Thus, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

The trial court explained its denial of Appellant's weight claim as follows:

[D]espite some inconsistencies in A.H.'s testimony, none of the evidence presented by the Commonwealth contradicted human experience or the laws of nature. Simply put, the jury found A.H.'s testimony that Appellant had sexual contact with her on numerous occasions credible, and that testimony clearly proved every element of the charged crimes. Having had the benefit of observing the victim's demeanor on the witness stand and manner of testifying, the court concludes that the jury's finding of guilt based on that evidence does not shock one's sense of justice. The victim's testimony was credible and compelling.

Trial Court Opinion, 10/24/23, at 4 (citations omitted).

Appellant asserts that, although the trial court cited the proper standard for it to apply to her weight claim, it proceeded to instead conduct a review of the sufficiency of the evidence, giving "inappropriate deference to the credibility determinations of the jury[.]"[1] Appellant's brief at 33. She argues

---

[1] Our Supreme Court has explained the difference between weight and sufficiency challenges as follows:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no

*(Footnote Continued Next Page)*

that, if the trial court had applied the proper legal analysis, it would have found A.H.'s factual allegations to be not only internally inconsistent, but also: (1) "completely at odds with uncontroverted, objective evidence," such as the size and layout of the camp bunkhouse where A.H. alleged sexual conduct occurred in the presence of others and the location and approach to A.H.'s home, rendering it "unfathomable" that Appellant could have entered the home undetected a score of time; and (2) contrary to the testimony of Appellant's character witnesses. *Id*. at 37-38. Appellant maintains that, viewing all the evidence, the court should have found the jury's verdict "so contrary to the evidence as to shock one's sense of justice." *Id*. at 39.

From our review of the certified record, we are unpersuaded that the trial court misapplied the law. While, taken out of context, it might appear that the trial court conducted a sufficiency review rather than a weight

---

obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (cleaned up).

analysis, closer inspection reveals that the court was responding to Appellant's claim as she argued it. There, as here, Appellant assailed A.H.'s credibility by suggesting that her testimony was implausible because it contravened physical facts and human experience, *i.e.*, it was impossible for Appellant to have assaulted A.H. in the claimed locations without being detected. Accordingly, the trial court expressed its disagreement with Appellant's assertion that the evidence against her "contradicted human experience or the laws of nature." Trial Court Opinion, 10/24/23, at 4. Rather than stopping there, the court, which observed the trial and **all** evidence admitted therein, went on to opine that it was not shocking to one's sense of justice that the jury credited A.H.'s testimony and found Appellant guilty. ***Id***. In other words, it concluded not only that the verdict was supported by sufficient evidence, but further that it was not against the weight of the evidence.

That ruling was not an abuse of discretion. As the Commonwealth points out, A.H.'s testimony described assaults at multiple locations, any one of which supported Appellant's convictions, and as for the initial assault in A.H.'s bedroom, she indicated that Appellant snuck into the home while the whole family was away at a concert.[2] ***See*** Commonwealth's brief at 8-9. Concerning Appellant's attempts to discredit A.H., the Commonwealth continues:

_____

[2] A.H. also explained more generally that Appellant used a key that was kept on the back porch to get into the house "when everybody was sleeping or nobody was home," and that there was no security system, motion-activated
*(Footnote Continued Next Page)*

> The jury, and the lower court, were not fooled into thinking that some inconsistencies from a [fourteen]- to [sixteen]-year-old sexual assault victim undermined a wealth of other credible testimony and circumstantial evidence that established the predatory nature of Appellant's conduct. The gifts, uninvited appearances, the Facebook messages, especially the false name used by Appellant in her attempt to evade A.H.'s mother's directive to stay away, all support the verdict, and the lower court's appropriate exercise of discretion in sustaining it.

*Id*. at 9.

We agree with the Commonwealth that the record supports the trial court's rejection of Appellant's weight claim.[3] Consequently, we conclude Appellant has not established that the trial court improperly conducted a sufficiency review of only the evidence favorable to the Commonwealth, or that it otherwise "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Clay*, 64 A.3d at 1056 (cleaned up). Instead, it acted within its discretion in concluding that the there were no defense-friendly facts of evidence that were so palpably of greater weight that the jury's verdict was shocking. Accordingly, Appellant's first claim of error fails.

---

lights, or dog inside the home that would have alerted anyone to her presence. *See* N.T. Trial, 12/19/22, at 89-91.

[3] We note that the trial testimony contained additional corroboration of Appellant's inappropriate physical relationship with A.H. In particular, A.H.'s middle school best friend testified to returning to a room to find Appellant straddling A.H. and giving her a back massage on an occasion where Appellant secured permission to stay overnight at the friend's home following a youth group gathering. *See* N.T. Trial, 12/19/22, at 183-85.

Next, Appellant asserts that she is entitled to a new trial based upon the trial court's denial of her motion to have the jury view A.H.'s childhood home. We begin our consideration of this claim with a review of the applicable law.

Pursuant to Pennsylvania Rule of Criminal Procedure 643(A), "the trial judge may in the judge's discretion order a view by the jury." Pa.R.Crim.P. 643(A). Absent an abuse of discretion, the denial of a request for a jury view will not be overturned. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

*Commonwealth v. Lowry*, 55 A.3d 743, 752 (Pa.Super. 2012) (cleaned up).

The trial court explained its denial of Appellant's motion as follows:

Here, a view was not necessary for the jury to gain an understanding of the layout of the home and the general nature of the surrounding area. During trial, photographs, video evidence, and testimony were all introduced describing A.H.'s home, and the surrounding area. Appellant offered into evidence a video which showed the driveway of the victim's home[ and] the roads and general area leading to the victim's home . . . . Through this evidence, the jury had ample opportunity to gain an understanding of the layout of the home, the roads leading up to the home, and the very rural nature of the area surrounding the home. A physical view of the home by the jury would have been of little, if any, benefit, and was unnecessary under the circumstances.

Trial Court Opinion, 10/24/23, at 5 (citations omitted).

Appellant asserts that the trial court erred in ruling upon her motion because it did so "without visiting and viewing the scene itself[.]" Appellant's brief at 42 (emphasis omitted). She suggests that the court's conclusion that she had "alternative means . . . to convey to the jury the remoteness of the locations," amounted to a "fail[ure] to exercise **any** discretion" in the absence

of its own in-person view of the area. *Id*. at 43 (emphasis in original). Appellant maintains that an in-person view by the jury was critical to her defense that, "[g]iven the unique layout of this area, it is incomprehensible that [she] would have been able to travel this road, at night and in the early morning, hide her car somewhere, on [twenty to thirty] occasions, and not get caught." *Id*. at 54. She posits that "[s]imply because photos exist, or a video can be created, does not, *ipso facto*, mean that a view is not warranted. To so conclude otherwise renders Rule 643 meaningless, as almost anything can be photographed or video recorded." *Id*. at 50.

Appellant's argument is unavailing. First, we observe the axiom that "all land is unique." *Oliver v. Ball*, 136 A.3d 162, 168 (Pa.Super. 2016). Yet Rule 643(A) does not mandate that all requests for a view must be granted. Rather, Appellant had to convince the court that the nature or quality of this particular area could not be adequately conveyed through other means. Second, despite Appellant's claim to the contrary, it is beyond peradventure that the trial court exercised discretion in choosing to rule upon Appellant's motion without viewing the area in person. Further, Appellant presents no authority for the proposition that a Rule 643(A) motion may only be decided after the trial court has itself viewed the scene.

Moreover, upon reviewing the certified record, we conclude that the court did not abuse that discretion in declining to grant Appellant's request. Significantly, the aerial view of A.H.'s home taken from Google Maps that

Appellant attached to her motion was sufficient for the trial court to comprehend the open, rural nature of the land surrounding A.H.'s home, the distances involved between roadways and residences, and how conspicuous a vehicle would be traveling to it during the daylight, or after dark if its headlights were illuminated. *See* Motion for View by Jury, 11/28/22, at Exhibit A. Regardless of whether Appellant ultimately succeeded in utilizing other means to show the jury the features of the area that impeached A.H.'s credibility and supported the defense,[4] we hold that she did not provide that trial court with a sufficiently compelling presentation in support of the need for a view that the court's denial of it amounted to an abuse of discretion. *Accord Lowry*, 55 A.3d at 752–53 (ruling that the trial court did not abuse its discretion in denying a motion for a view where photographs, video, and testimony were adequate to "provide the jury with a proper understanding of the scene"). No relief is due.

_____

[4] Appellant contends that the photographs and video recordings admitted at trial were "woefully deficient in capturing the scene," lamenting that the cell phone video she had to use because "an issue occurred with the drone" that she had intended to use to capture images of the area was "limited by the screen dimensions of the cell phone, as well as by the parameters of the recording, generally." Appellant's brief at 52-53. However, the fact that the amateur drone operator whom she hired a week before trial was unable to use the drone because it was too windy that day and used a cell phone rather than another type of camera to video the area from the ground, plainly had no bearing on the trial court's decision made weeks before, and she did not renew her motion at trial. Thus, the failure to capture drone footage would be relevant in this appeal only as to whether she was prejudiced by the ruling. Since we ascertain no abuse of discretion, we need not examine if prejudice resulted.

Appellant's final challenge is to the discretionary aspects of her sentence. Initially, the following legal principles govern our consideration of this claim:

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [pursuant to] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Lucky*, 229 A.3d 657, 663–64 (Pa.Super. 2020) (cleaned up).

Appellant filed a timely notice of appeal, preserved her issues in a timely post-sentence motion, and included a Rule 2119(f) statement in her brief. Therein, Appellant asserts that the trial court did not impose an individualized sentence, instead focusing only on the nature of the crimes without consideration of all pertinent sentencing factors. *See* Appellant's brief at 64-66. We conclude that Appellant has raised a substantial question that triggers our review of the substance of her challenge. *See Commonwealth v. Luketic*, 162 A.3d 1149, 1161-62 (Pa.Super. 2017).

The following law pertains to the merits of Appellant's challenge:

Appellant must demonstrate that the sentencing court abused its discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, Appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Solomon*, 247 A.3d 1163, 1168 (Pa.Super. 2021) (cleaned up). Furthermore, "[w]here the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Torres*, 303 A.3d 1058, 1065 (Pa.Super. 2023) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

While broad, "the trial court's discretion is not unfettered." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011). The sentence imposed "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics

and potential for rehabilitation." ***Commonwealth v. Taylor***, 277 A.3d 577, 593 (Pa.Super. 2022) (cleaned up). Further, our General Assembly has provided as follows concerning total confinement:

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S. § 9725.

Appellant's aggregate sentence of six to twelve years of imprisonment is composed of the following: (1) three to six years for aggravated indecent assault—complainant less than sixteen; (2) a consecutive term of three to six years for unlawful contact with a minor; (3) a concurrent term of one to six years for institutional sexual assault; and (4) concurrent terms of six to twelve months each for a statutory sexual assault and corruption of minors. All sentences are within the standard range of the Sentencing Guidelines. ***See*** N.T. Sentencing, 3/15/23, at 33-35.

Appellant's argument that the trial court deviated from sentencing norms in imposing this sentence is as follows:

Here, other than focusing on the seriousness of the offenses, nothing in the record reflects that the trial court considered any of the other factors set forth in §§ 9721 and 9725. For example, the trial court does not assess and indicate whether any period of incarceration is necessary to protect the public from [Appellant], and whether [Appellant] actually poses an undue risk of committing another crime. Moreover, the trial court's comments do not reflect any consideration of [Appellant]'s history, character, and condition. Critically, character testimony was presented at trial by several witnesses which reflected that [Appellant] had a reputation for being a law-abiding person. Indeed, despite the jury's verdict, support for [Appellant] did not wane. Additionally, character letters were submitted at the time of sentencing. Moreover, testimony and information were presented that reflects that [Appellant] had a positive impact on her community over the years, including efforts to promote the spiritual needs of the community. None of this was referenced by the trial court when fashioning the sentence.

Furthermore, nothing in the record supports the conclusion that some unspecified rehabilitative need of [Appellant] can only be addressed by a significant term of incarceration. Instead, and again, the trial court focused on the crimes at issue.

Appellant's brief at 73-74 (cleaned up).

Our review of the certified record does not support Appellant's prayer for relief. Since the trial court had the benefit of the PSI report, it presumptively was aware of and considered the pertinent § 9721 factors. *See Torres*, 303 A.3d at 1065. Appellant has presented nothing to rebut that presumption. The court also expressly considered the character evidence offered at trial in addition to the letters submitted on Appellant's behalf for sentencing purposes and acknowledged the bases her counsel argued for

- 15 -

mitigation.[5]   *See* N.T. Sentencing, 3/15/24, at 11, 33; Trial Court Opinion, 10/24/23, at 6-7.  However, it was unpersuaded that her mitigating evidence, such as her volunteer work with youth groups and church, warranted a sentence below the guidelines range given her "brazen predatory conduct" and her exploitation of the position of power and influence she was able to exert over A.H. through said volunteer work.  *See* N.T. Sentencing, 3/15/24, at 32-33.  The court was also cognizant that Appellant's crimes are "the type of crimes that have a lifelong impact on victims."  *Id.* at 32.  The trial court's ultimate focus on the seriousness of Appellant's crimes was not inappropriate, but instead an indication that it was fulfilling its obligation pursuant to § 9725(3) to impose a sentence of total confinement, in this instance composed of standard-range sentences with the two most serious offenses running consecutively.

In sum, Appellant has not established that, in sentencing her, the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision."  *Solomon*, 247 A.3d at 1168 (cleaned up).  Accordingly, we have no basis to disturb that sentence.

---

[5] While the court did not delve further into her character on the record, perhaps that was because Appellant and her counsel devoted most of their time at the sentencing hearing to expressing disbelief at the jury's verdict, attacking the sufficiency of the evidence, maintaining her innocence, and speaking of the impending appeal.  *See* N.T. Sentencing, 3/15/24, at 5-10, 17-20.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/17/2024